COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

DEVONDRIC SMITH,                                              No. 08-07-00198-CR

§

　　　　Appellant,                                            Appeal from

§

v.                                                           297th District Court

§

THE STATE OF TEXAS,                                          of Tarrant County, Texas

§

　　　　Appellee.                                             (TC # 1015430D)

§

## **O P I N I O N**

Devondric Smith appeals his conviction of possession of aggravated robbery with a deadly weapon, enhanced by a prior felony conviction. After finding Appellant guilty, the jury found the enhancement paragraph true and assessed his punishment at imprisonment for a term of fifty years. We affirm.

## **FACTUAL SUMMARY**

On December 28, 2005 at around 5 p.m., Charles Williams drove his black Suburban to the Family Dollar store on Miller Street to get a teething ring for his daughter and a lunch pail for work. As he exited the store, he saw two black males sitting in a white Honda Accord parked next to his Suburban on the driver's side. Williams opened the driver's door to his vehicle and both men in the Honda got out. The man who had been seated in the passenger seat pointed a handgun in Williams' side and told him to "get in, don't make things badder than what it is, ain't nothing but a carjacking." Williams got in and slid over to the front passenger seat when the man told him to "get over," accidentally dropping his keys between the seat and console. Williams later identified James Adams from a photo lineup as the first gunman. A gold Nissan pulled up

right behind his Suburban. A second gunman got out of the Nissan and entered the Suburban through the right rear passenger door and pointed at Williams what he described as an assault rifle, like an "AK or something" with a folding stock. Adams demanded that Williams give him all of his money and he gave them the $200 he had in his pocket. Adams also demanded the keys to the Suburban but Williams told him he did not have the keys. The second assailant told Adams, "we got the money, come on, let's go." Adams and the second man then exited the Suburban. Williams heard gunfire and he thought they had shot at him. He saw Adams get in the white Honda and the second assailant got in the gold Nissan. After the robbers left, Williams went into the Family Dollar Store and began telling people he had been robbed.

Tommy Miller, the store manager, went to the front of the store and saw someone who appeared to be panicked, yelling and saying, "Oh my God, oh my God." Initially Miller could not tell what had happened, but someone else said the man had been robbed. Miller called 9-1-1 and tried to tell the operator what had happened, but he was unable to get any information from Williams because of his emotional state. Williams left the store before the police arrived. At trial, Williams explained that he left because he was on felony probation for possession or manufacture of a controlled substance and did not want to talk with the police. After Williams left, Miller discovered a large pool of blood in the parking lot in front of the store.

Officer D.L. Blue of the Fort Worth Police Department received a call about a large amount of blood in the parking lot at the Family Dollar Store. Suspecting that someone had been shot, she began checking with local hospitals. She learned that James Adams was at Baylor City View Hospital with a gunshot wound in the left thigh. That hospital is about 20 to 25 minutes from the Family Dollar Store on Miller. Adams subsequently died as a result of the injury. Officer Lori Scheiern, a crime scene investigator, examined the blood in the parking lot at the

Family Dollar Store. She found a blood trail leading away from the blood pool in the parking lot. Based on the elongated appearance of the blood drops, Scheiern determined that the injured person was traveling at a high rate of speed through the parking lot away from the front of the store and toward the street. Scheiern could not state precisely how fast the injured person was moving but it was certainly faster than walking.

Later that evening, the police notified Adams' mother that her son had died from a gunshot wound. Adams had hung out with two brothers she knew only as "C" and "D." After learning of her son's death, Ms. Adams notified several of his friends, including "C" and "D." "C" told Ms. Adams two stories about how her son was shot. First, he said that he and James had gone to Miller Street to rob somebody but they had changed their minds. He also said that James shot himself in the leg as they were running to the car and that he had taken James to the hospital. "C" also told Ms. Adams that he and some of his friends were wrestling and the gun went off. Ms. Adams called Sgt. Cheryl Johnson and reported what "C" had told her. Another officer knew that Appellant was known as "C" and his brother, Kenard Smith, was known as "D." Sgt. Johnson prepared photo lineups which included the photographs of Appellant and Kenard Smith and showed them to Ms. Adams. Ms. Adams identified Appellant as "C" and Kenard Smith as "D." At trial, Ms. Adams identified Appellant as the person she knew as "C."

Williams did not originally plan on speaking to the police about the robbery but he changed his mind after he learned that someone had died. Two days after the robbery, Williams went to the police station where he spoke with Sgt. Johnson and viewed photo lineups. From one lineup, he identified Adams as the first assailant who had held a gun to his side. He was unable to identify the second person because he had remained behind Williams the entire time. On cross-examination, Williams stated that Appellant did not "look like the guy that got in the back

seat of the car." He said that Appellant's brother, Kenard Smith, looked like the second male that had been sitting in the white car.

On January 26, 2006, Appellant spoke with Sgt. Johnson and made a voluntary written statement. In the statement, Appellant said that he and Adams wanted some heroin so they went to the Family Dollar Store to "hit a lick."[1] Adams was armed with a .44 caliber and Appellant had a TEC 9. They followed a guy to the store with the intention of taking him in his car, going around the corner and robbing him, and then throwing his keys in the field. As they got out of the car, however, they changed their minds and were getting back into their car when Adams' gun discharged. Adams slumped down and said, "Cuz I'm shot, I shot myself." Appellant drove Adams to a hospital and dropped him off at the emergency room. The next day, Appellant learned that Adams had died. He went to see Adams' mother and told her what had happened.

Appellant presented two witnesses in his defense--Marilu Webster and Willie Faggett. Webster, a store employee, was working on the evening of December 28, 2005. She recalled a man coming into the store saying he had been robbed. She called 9-1-1 and handed the phone to the store manager. Webster thought it was unusual that the victim said he did not have time to wait for the police. She also remembered the man saying, "they were trying to get him, but he got to them first." She understood this to mean that he had shot the other person.

Faggett owns a business next door to the Family Dollar Store. Around 7:30 p.m. on December 28, 2005, he saw a Suburban and another vehicle pull into the parking lot and block each other while gunfire was exchanged. Faggett believed ten to twelve shots were fired. The person in the Suburban had been shot and was bleeding. No one got out of either vehicle and the Suburban left before the police arrived.

---

[1] "Hit a lick" is a street term for a robbery.

The trial court's charged included an instruction on the law of parties. The jury rejected Appellant's defense and found him guilty of aggravated robbery as alleged in the indictment.

## LEGAL SUFFICIENCY

In Point of Error One, Appellant challenges the legal sufficiency of the evidence supporting the jury's verdict. In assessing the legal sufficiency of the evidence to support a conviction, an appellate court must consider all of the record evidence in the light most favorable to the verdict, and must determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009). This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789; *Klein v. State*, 273 S.W.3d 297, 302 (Tex.Crim.App. 2008). We consider all of the evidence, whether admissible or inadmissible. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton*, 235 S.W.3d at 778. The same standard of review is used for both direct evidence and circumstantial evidence cases. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

The indictment alleged that Appellant, while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally or knowingly threatened or placed Charles Williams in fear of imminent bodily injury or death, and he used or

exhibited a deadly weapon, to-wit: a firearm. Thus, the indictment charged Appellant with

aggravated robbery under Sections 29.02(a)(2) and 29.03(a)(2) of the Penal Code. *See*

TEX.PENAL CODEANN. §§ 29.02(a)(2)(Vernon 2003)(defining robbery); TEX.PENAL CODEANN.

§§ 29.03(a)(2)(defining aggravated robbery as committing robbery under Section 29.02 and using

or exhibiting a deadly weapon). The court's charge instructed the jury on the law of parties and

the application paragraph permitted the jury to find Appellant guilty as either a primary actor or

as a party.

The law of parties provides that "[a] person is criminally responsible for an offense

committed by the conduct of another if . . . acting with intent to promote or assist the commission

of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit

the offense." TEX.PENAL CODEANN. § 7.02(a)(2)(Vernon 2003). Consistent with Section

7.02(a)(2), the trial court instructed the jury that:

> A person is criminally responsible as a party to an offense if the offense is
> committed by his own conduct, by the conduct of another for which he is
> criminally responsible, or both. A person is criminally responsible for an offense
> committed by the conduct of another if, acting with intent to promote or assist the
> commission of the offense, he solicits or encourages, directs, aids or attempts to
> aid the other person to commit the offense. Mere presence alone will not
> constitute one a party to a crime.

The application paragraph provided as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the
> 28th day of December, 2005, in Tarrant County, Texas, the Defendant, Devondric
> Smith, did then and there intentionally or knowingly, while in the course of
> committing theft of property and with intent to obtain or maintain control of said
> property, threaten or place Charles Williams in fear of imminent bodily injury or
> death, and did then and there use or exhibit a deadly weapon, to wit: a firearm,
> OR if you find from the evidence beyond a reasonable doubt that on or about the
> 28th day of December, 2005, in Tarrant County, Texas, James Adams did then
> and there intentionally or knowingly while in the course of committing theft of
> property and with intent to obtain or maintain control of said property, threaten or
> place Charles Williams in fear of imminent bodily injury or death, and did then

and there use or exhibit a deadly weapon, to-wit: a firearm, and the defendant Devondric Smith, acting with intent to promote or assist the commission of the offense, encouraged, directed, aided or attempted to aid James Adams in the commission of said offense, if any, then you will find the Defendant guilty of aggravated robbery, as charged in the Indictment.

Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement. *Salinas v. State*, 163 S.W.3d 734, 739 (Tex.Crim.App. 2005). Party participation may be shown by events occurring before, during, and after the commission of the offense, and may be demonstrated by actions showing an understanding and common design to do the prohibited act. *Id*. at 739-40.

Viewed in the light most favorable to the verdict, the evidence showed that Appellant knew James Adams intended to commit a robbery, that Appellant was physically present at the scene of the robbery, and that he encouraged, directed, or aided Adams in the commission of the offense. After James died, Appellant went to see Ms. Adams and told her that he and James had gone over to Miller Street to rob somebody. They changed their minds, but when they were running back to the car, James' gun went off and he was shot in the leg. Appellant's statement that they were running back to the car is consistent with Officer Scheirern's testimony that the injured person was moving faster than walking. Williams identified James Adams as the first assailant who placed a handgun in his side and told him it was a carjacking. While Williams could not identify Appellant as the second assailant who got into the car with an assault type rifle, he also stated that he did not see the second assailant because he remained behind Williams during the entire robbery. Further, Appellant's own written statement establishes that he went to the Family Dollar Store with James Adams to commit a robbery and they actually identified a victim. Williams' account of the robbery is consistent with certain aspects of Appellant's

statement. First, Williams' observations of the weapons used by the two robbers is consistent with Appellant's statement that Adams was armed with a handgun and Appellant had a TEC 9. Second, Williams stated that Adams forced Williams to get in the front passenger seat and demanded the keys. When Williams could not find the keys because he had dropped them, the second robber urged that they should just leave because they had the money. Williams' testimony about how the robbery occurred is consistent with Appellant's statement that their plan included forcing someone to drive around the block, taking his money, and throwing the victim's keys in a field. Third, Williams heard a gunshot after the robbers exited his vehicle. According to Appellant's written statement and his statement to Adams' mother, Adams accidentally shot himself as he was getting back in the car so Appellant took him to a hospital and dropped him off at the emergency room. While Appellant claims that there was a change of heart about the robbery, the jury was free to disbelieve him. As fact finder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Taken in the light most favorable to the verdict, a rational trier of fact could find beyond a reasonable doubt that Appellant is guilty of the aggravated robbery as a party. Having determined that the evidence is legally sufficient under the law of parties theory, we need not address whether it also sufficient to support Appellant's conviction as a primary actor. Point of Error One is overruled.

## FACTUAL SUFFICIENCY

In his second point of error, Appellant contends that the evidence is factually insufficient to support his conviction. In reviewing factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129

(Tex.Crim.App. 1996).  In performing our review, we are to give due deference to the fact finder's determinations.  *See Johnson*, 23 S.W.3d at 8-9; *Clewis*, 922 S.W.2d at 136.  There are two ways in which the evidence may be factually insufficient.  The first is that the evidence supporting the verdict, though legally sufficient, is nonetheless too weak to support it.  *Lancon v. State*, 253 S.W.3d 699, 705 (Tex.Crim.App. 2008); *Goodman v. State*, 66 S.W.3d 283, 285 (Tex.Crim.App. 2001).  The second is that, when considering conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence.  Thus, the question we must consider in conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  *See Johnson*, 23 S.W.3d at 11.

Under the first part of this standard, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury.  *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006).  Under the second part, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict.  *Id.*  Before finding that the evidence is factually insufficient to support a verdict under the second part of the standard, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict.  *Id.*

The existence of alternative reasonable hypotheses may be relevant to the factual sufficiency review but they are not determinative.  *Wilson*, 7 S.W.3d at 141.  When a defendant identifies an alternative reasonable hypothesis raised by the evidence, the standard of review

remains the same. *Richardson v. State*, 973 S.W.2d 384, 387 (Tex.App.--Dallas 1998, no pet).

Appellant first argues that the evidence is factually insufficient under the first part of the standard because the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination. In support of this argument, he points to a lack of eyewitness identification and forensic evidence connecting him to the crime. While Williams did not identify Appellant as the second robber, Appellant placed himself at the scene of the robbery with his oral statements to Ms. Adams and his written statement to Sgt. Johnson. The lack of eyewitness testimony and forensic evidence does not render the evidence factually insufficient.

Appellant also challenges the factual sufficiency of the evidence under the second part of the standard by identifying evidence which impeached the complainant's credibility and contradicted his testimony. Appellant first argues that Williams' behavior in leaving the scene before the police arrived undercuts his credibility because it is inconsistent with a law-abiding citizen who has just been robbed. Williams explained that he left because he was on felony probation and he did not want to talk to the police. The store manager's testimony also supports an inference that Williams was behaving like someone who had just been robbed in that he was distraught and appeared to be in a state of panic. Appellant next asserts that the testimony of defense witnesses Marilu Webster and Willie Faggett further undermined Williams' credibility by raising an alternative reasonable hypothesis that Williams was not robbed but instead was involved in a shootout with "some other individuals." The testimony of these two witnesses raises this hypothesis but it is contradicted by other evidence establishing Appellant's guilt as a party, including Williams' testimony about the robbery, his identification of Adams as one of the robbers, and Appellant's statements. The record does not support a conclusion that the guilty verdict is outweighed by the great weight of the contrary evidence. For these reasons, we

overrule Point of Error Two.  Having found the evidence legally and factually sufficient to support the jury's finding of guilt, we affirm the judgment of the trial court.

January 6, 2010

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)