# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00508-CR

**Arturo Vargas, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. CR21657, HONORABLE ED MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Arturo Vargas was arrested and charged with the crime of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02(a) (West 2003) (listing elements for offense). Deputy Jonathan Beathard was the investigating officer who arrested Vargas. Ultimately, a trial was scheduled, and Vargas elected to have the jury determine his guilt and to have the district court determine his punishment. The jury found him guilty. During the punishment hearing, the State alleged, for punishment-enhancement purposes, that Vargas had been convicted of two prior felonies: murder and manslaughter. *See id.* § 12.42(d) (West Supp. 2009) (elevating permissible punishment range for repeat felony offenders). Vargas pleaded not true to the allegations, and the State introduced evidence regarding the alleged prior crimes. At the end of the hearing, the court found both allegations true and sentenced Vargas to 25 years' imprisonment. On appeal, Vargas

challenges the district court's determination regarding the alleged prior convictions. We will affirm the judgment of the district court.

## DISCUSSION

In one issue on appeal, Vargas contends that the evidence pertaining to the prior felony convictions is "legally and factually insufficient to specifically link [him] to the prior convictions for purposes of the enhancement allegations."

Before a prior conviction may properly be used to enhance a defendant's punishment, "the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction."[1] *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *see Davis v. State*, 268 S.W.3d 683, 715 (Tex. App.—Fort Worth 2008, pet. ref'd). Although the State must "show by independent evidence that the defendant" was the person previously convicted, there is no specific manner by which the State must link prior convictions to a defendant. *See Beck v. State*, 719 S.W.2d 205, 209-10 (Tex. Crim. App. 1986); *see also Flowers*, 220 S.W.3d at 922 (explaining that "[a]ny type of evidence, documentary or testimonial, might suffice"). Usually, the State will offer "certified copies of a judgment and a sentence and authenticated copies of the Texas Department of Corrections records including fingerprints." *Beck*, 719 S.W.2d at 209. This type of information is often called a "pen pack," *Davis*, 268 S.W.3d at 715, but the admission of pen packs is "not normally sufficient standing alone . . . even if the name on the . . . pen packet is the same as the defendant at trial," *see Beck*, 719 S.W.2d at 210; *see also Zimmer v. State*,

---

[1] On appeal, Vargas does not challenge the sufficiency of the evidence of the conviction. Accordingly, we only address the second (linking) requirement.

2

989 S.W.2d 48, 50 (Tex. App.—San Antonio 1998, pet. ref'd) (noting need for evidence of identity in addition to pen packs). For this reason, the State usually also offers additional linking information. Although there is no exhaustive list for the methods by which the link may be established, courts have identified several ways in which the link has been made, including the following: admitting "expert testimony identifying" the fingerprints from the prior convictions "as identical with known fingerprints of the defendant," eliciting "testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him," obtaining an admission from the defendant, "matching a photograph of the defendant in a [pen pack] . . . to the defendant at trial," or using a combination of these methods. *Beck*, 719 S.W.2d at 209-10; *Zimmer*, 989 S.W.2d at 50.

When determining the sufficiency of the evidence, courts must bear in mind that the evidence used to link a prior crime to a defendant often "resembles a jigsaw puzzle." *Human v. State*, 749 S.W.2d 832, 835-36 (Tex. Crim. App. 1988) (op. on reh'g). Stated differently, "[t]he pieces standing alone usually have little meaning. However, when the pieces are fitted together, they usually form the picture of the person who committed the alleged prior conviction or convictions." *Id.* at 836. Moreover, the court must be aware that the "trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece" and that "the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Flowers*, 220 S.W.3d at 923; *see also Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (explaining that under factual-sufficiency review, fact finder is sole judge of weight and credibility of evidence presented); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) (noting that under legal-sufficiency review, trier of

3

fact is entitled to determine what weight to give any particular evidence, to resolve conflicts in evidence, and to evaluate credibility of witnesses).

In reviewing the legal sufficiency of the evidence presented at trial, a reviewing court must view all of the evidence in the light most favorable to the State. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). The evidence is legally sufficient if based on "the totality of the evidence," the trier of fact could determine beyond a reasonable doubt that there was a previous conviction and that the defendant was the one convicted. *Flowers*, 220 S.W.3d at 923. Unlike for legal-sufficiency reviews, in factual-sufficiency determinations, all of the evidence is considered in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). The evidence is factually insufficient only if it is so weak that the trial court's determination "seems clearly wrong and manifestly unjust" or if the determination is "against the great weight and preponderance of the evidence." *Id.* at 414-15.

In this case, the State attempted to link Vargas to two prior convictions by admitting the pen packs for those prior crimes and through the testimony of Vargas's brother (Camilo Vargas) and Deputy Beathard who investigated the burglary at issue in this case. The packs include the judgments prepared for the prior crimes, photos of the individual adjudicated guilty in those crimes, and biographical information for that individual. The first pack states that "Arturo Vargas" was convicted of "voluntary manslaughter" in 1985. The second pack states that "Arturo Vargas" was convicted of "murder" in 1980. Both packs specify that the convictions occurred in Milam County. Further, both packets list the birthday for "Arturo Vargas" as "8-10-59." In his testimony, Beathard testified that Vargas was born on "8/10 of 1959."

4

Both packs also list the height for the individual convicted as 5'3", and Beathard testified that Vargas was approximately 5'3" tall. In addition, the first pack specifies that the individual convicted weighed 133 pounds, and the second pack reveals that the individual convicted weighed 128 pounds. When describing Vargas in his testimony, Beathard stated that Vargas weighed "135 pounds" when he was arrested. Furthermore, both packs contain a signature from the individual convicted (Arturo Vargas), and the State introduced two documents that Vargas signed during the investigation of this case. The documents are a consent-to-search form and a *Miranda* warning form.

After the exhibits described above were admitted, Camilo was called to the stand. In his testimony, Camilo admitted that Vargas had been to prison on two occasions and that he thought that Vargas was sent to prison after having been convicted of murder and of voluntary manslaughter. Specifically, Camilo's testimony reads as follows:

Q: And it's true that your brother has been to prison twice before, isn't it?

A: I think, yes.

Q: Okay. And do you know what that was for?

A: Yes, ma'am.

Q: And it was for murder and voluntary manslaughter, is that correct?

A: I think so, yes.

Although the State did not call a fingerprint expert to link the previous crimes to Vargas, the State did link the prior crimes through the admission of the pen packs, through the physical description of Vargas provided by Beathard, and through the testimony of Camilo stating

5

that Vargas had been previously convicted. *See Davis*, 268 S.W.3d at 716 (explaining that fact-finder may consider prior convictions when "State offers conviction records into evidence and establishes through the testimony of someone with personal knowledge that the defendant on trial is the same person who was previously convicted"). In addition, although the signature block from one of the pen packs had faded and was illegible, the district court had the benefit of the legible signature block from the second pen pack and was free to compare that signature with the ones made by Vargas on the consent form and the *Miranda* warning form. Finally and perhaps most significantly, the district court also had the benefit of photos taken of the person adjudicated guilty in the prior offenses and was able to compare the individual in those photos with Vargas, who was seated before the court. Although Vargas correctly points out that Beathard testified that he "would have a difficult time recognizing [Vargas] because of the age of this photograph versus the age of [Vargas] now," the district court was free to compare those images to Vargas. *See Flowers*, 220 S.W.3d at 925 (noting that judge could compare picture of person who committed prior crime "to the person standing before him").

In light of the fact that the defendant from the prior offenses shares the same name, birthday, and height as Vargas, in light of the nearly equivalent weight between Vargas and the defendant from those prior crimes,[2] in light of the testimony from Camilo demonstrating that Vargas

---

[2] In his brief, Vargas contends that the fact that the weights in the pen packs are not identical to Vargas's weight at the time that he was arrested in this case weighs against a determination that he was the person who committed the prior crimes. Vargas also engages in a piecemeal attack of the other biographical information linking him to the prior convictions. Although he acknowledges that he shares the same name and birthday as the individual previously convicted, he asserts that his name and birthday are not uncommon. Accordingly, he argues that the identical names and birthdays cannot properly link him to the prior crimes. Similarly, Vargas contends that although his recorded height is the same as the individual described in the pen packs, that equivalence cannot help to

6

had been previously convicted of the same types of crimes alleged in the pen packs,[2] in light of the

---

establish the necessary link because the height was not precisely measured and was, instead, rounded to the nearest inch.  For that reason, he contends that there could be a significant difference in height between him and the individual previously convicted.

However, as mentioned previously, each particular piece of evidence does not need to dispositively link Vargas to the prior convictions; rather, the question is whether the cumulative effect of all of the evidence together can establish the link.  *See Human v. State*, 749 S.W.2d 832, 835-36 (Tex. Crim. App. 1988) (op. on reh'g).  Accordingly, we must consider whether all of the evidence provided, considered together, establishes a link beyond a reasonable doubt.  Moreover, although Vargas correctly points out that his weight and the weights listed for the individual previously convicted are not identical, the district court was free to infer that an individual's weight can fluctuate over time and to determine that the similarity in the  weights supports a conclusion that Vargas was the individual described in the pen packs.  Similarly, even assuming that the height measurements were obtained in the manner asserted by Vargas, the district court was free to conclude that the similarity in height weighed in favor of a determination that Vargas had been convicted of the crimes alleged by the State.

[2] Vargas also contends that Camilo's testimony does not adequately link him to the prior convictions because it, according to Vargas, only generally states that he had "been to prison, twice before, for **what [Camilo] thinks** was murder and manslaughter."  Further, Vargas argues that the testimony was inadequate because it did not adequately describe the prior convictions (e.g. date of convictions) and did not state that Vargas had been convicted of the specific crimes listed in the pen packs.

This argument again ignores the fact that the sufficiency of the link is assessed by considering all of the evidence.  Although Camilo did not provide the specific information that Vargas mentions in his brief, he did identify Vargas and did state that Vargas had previously been convicted of murder and voluntary manslaughter.  *See Beck  v. State*, 719 S.W.2d 205, 209-10 (Tex. Crim. App. 1986) (stating that link may be provided by testimony from witness who knows defendant and is aware of prior convictions); *Davis v. State*, 268 S.W.3d 683, 716 (Tex. App.—Fort Worth 2008, pet. ref'd) (noting that link to prior conviction may be established "through the testimony of someone with personal knowledge that the defendant on trial is the same person who was previously convicted").  The pen packs stated that an individual with Vargas's name had been convicted of murder and manslaughter, and the court was free to rely on the pen packs, Camilo's testimony, and the other evidence presented when determining that Vargas had been convicted of the crimes alleged by the State.  Moreover, Vargas's argument ignores the fact that when establishing these types of links, the State may use a combination of methods and that in this case the State also presented photographs and handwriting samples to help establish the link.  *See Beck*, 719 S.W.2d at 210; *see also Flowers v. State*, 220 S.W.3d 919, 921-22 (Tex. Crim. App. 2007) (explaining that State may establish link in "a number of different ways").

fact that the prior convictions and the one at issue on appeal all occurred in Milam County, and in light of the photographs and handwriting samples given to the district court, we must conclude that regardless of whether the evidence is viewed in a neutral light or in the light most favorable to the State, sufficient evidence was presented linking Vargas to the prior convictions alleged. Accordingly, we overrule Vargas's sole issue on appeal.

## CONCLUSION

Having overruled Vargas's issue on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   April 15, 2010

Do Not Publish