

# NUMBER 13-10-412-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GUILLERMO RODRIGUEZ
AKA WILLIE RODRIGUEZ,                                               **Appellant,**

**v.**

THE STATE OF TEXAS,                                                 **Appellee.**

### On appeal from the 40th District Court
### of Ellis County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Vela
### Memorandum Opinion by Justice Vela

A jury convicted appellant, Guillermo Rodriguez a/k/a Willie Rodriguez, of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2010). Appellant pleaded true to the two enhancement allegations in the indictment, and after the jury found the enhancement allegations to be true, it assessed

punishment at thirty-five years' imprisonment. In two issues, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.[1]

## I. FACTUAL BACKGROUND

### A. State's Evidence

Kandice Lemley testified that on July 8, 2009, appellant invited her to "drink with him" at his apartment near Italy, Texas. She accepted the invitation, arriving at approximately 8:00 p.m. After drinking, she attempted to leave, but appellant "grabbed" her arm. Lemley pulled away from appellant, and he hit her on the back with an empty beer bottle, causing her pain. Lemley testified that she "took off running," and appellant chased her and threw beer bottles at her, calling her profane names and yelling that he was going to "flatten [her] tires." Lemley managed to call the police on her cell phone and ran to a friend's residence. After the police arrested appellant, she went to her car and saw that one of its tires was flattened.

On cross-examination, defense counsel asked Lemley, "[Appellant] did not throw a beer bottle. He had it in his hand when it hit you above the shoulder blade?", she said, "Yes, sir" and said he hit her with "a whole beer bottle" made of glass. When defense counsel asked her, "Were you injured that day by the beer bottle?", she said, "It hurt." Lemley testified she did not seek medical attention after the assault.

Deputy Lori Harvey testified that when she arrived at the scene, she saw that one of the tires on Lemley's car had a cut in the side wall and was flat. She found several broken beer bottles that were shattered along the side of Lemley's car. She also found an intact beer bottle in the grass where Lemley had said she was running. Deputy

---

[1]We also have affirmed a case involving Guillermo Rodriguez in cause no. 13-10-00406-CR.

Harvey collected the beer bottle, and the prosecutor introduced it into evidence as State's exhibit 32. When the prosecutor asked Deputy Harvey, "This State's Exhibit 32, is a beer bottle like this, depending on how it's used, capable of causing serious bodily injury or even death?", she said, "Yes."

On cross-examination, Deputy Harvey testified that Lemley said the beer bottle struck her between the shoulder blades. She did not see any injuries on Lemley.

Officer Chris Bentley testified that when he arrived at the scene, Lemley "was scared" and told him she and a friend named "Willie" had an argument and that he started throwing beer bottles at her. Officer Bentley testified he and his partner, Officer Adams, went to appellant's apartment, where appellant told them he and Lemley "had some drinks, beers, and that she wouldn't leave. And he had to throw beer bottles at her because she wouldn't leave." When they tried to arrest him, "[a] fight ensued," and they had to pepper spray him in order to get him handcuffed. While escorting him to a police car, Officers Bentley and Adams held his arms, and Officer Chen, who had arrived as a backup, followed behind the trio. As they approached the car, appellant said he was not going to jail and kicked the police car's door. Officer Bentley testified that when appellant "kicked the door, it knocked us [the three officers] to the ground." When Officer Bentley fell to the ground, he "cracked a bone in [his] elbow." When the officers put appellant into the car, he kicked the inside of it, damaging the door frame. When the prosecutor asked Officer Bentley, "Is a beer bottle, depending on how it's used and how it's intended to be used, is it capable of causing serious bodily injury or death?", he said, "Yes, sir, it can." When the prosecutor asked him, "Would it be reckless to hit someone with a beer bottle?",

3

he said, "Yes, sir."

## B. Defense Evidence

On the night in question, appellant's friend, Garland Kelley, went to appellant's apartment for about ten minutes and drank a beer with appellant and Lemley. During that time, he saw them drinking beer, but he did not see them argue. He testified that there was a box of bottled beer outside appellant's apartment. He said that appellant showed no signs of intoxication that night. On cross-examination, when the prosecutor asked Kelley, "You've never seen him [appellant] get kind of out of control when he drinks?", he said, "Not around me."

Appellant testified that on the day in question, but prior to Lemley's arrival at his apartment, he bought her a twelve-pack of bottled beer. He took the beer to his apartment, and he testified that when Lemley arrived, he drank canned beer, and she drank bottled beer. He stated that they drank a few beers "and then she was acting kind of crazy like she was on drugs or something." When she asked him if he could give her $100, he refused. After Lemley drank about three beers, she asked him if he was going to give her the $100. He told her "maybe Friday" when he got paid. When he refused to give her the money, "[s]he was very angry and she picked up the twelve pack and walked . . . across the street" to her car. After she left, he went inside his apartment. He testified that he did not try to stop her from leaving, did not call her profane names, and did not grab her or hit her with a beer bottle. He denied that he had assaulted or attempted to assault Lemley on July 8, 2009.

4

Later that evening, police officers knocked on his front door.   Appellant testified that when he opened it, "[t]hey just went in and grabbed me and pulled me out against my will."   He testified that he was pepper sprayed and that "after I was pulled down they picked me up and slapped me on the concrete floor right there in the driveway," which caused him to suffer a broken wrist.   The officers handcuffed him, and at some point, he "passed out."   He said he was not intoxicated and that he only had two or three beers that night.   He believed Lemley was intoxicated.

## II. Discussion

In issue one, appellant argues that the evidence is legally insufficient to support his conviction because the evidence fails to prove he used or exhibited a deadly weapon during the commission of the offense.   In issue two, he argues the evidence is factually insufficient to support his conviction for aggravated assault because the evidence fails to prove he used or exhibited a deadly weapon during the commission of the offense.   We review his sufficiency complaints only under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)).

### A. Standard of Review

"When conducting a legal sufficiency review, a court must ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at trial established guilt beyond a reasonable doubt.'"   *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson*, 443 U.S. at 318-19) (emphasis in original).   "In doing so, we

5

assess all of the evidence 'in the light most favorable to the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). "After giving proper deference to the fact finder's role, we will uphold the verdict unless a rational fact finder must have had reasonable doubt as to any essential element." *Id.* at 518. We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326.

## B. Applicable Law

Our review of a legal sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008). "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

A person commits an aggravated assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2010). Bodily injury is "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). A deadly weapon is anything "that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). The placement of the word "capable" is crucial to determining deadly weapon status. *Tucker v. State*, 274 S.W.3d

6

688, 691 (Tex. Crim. App. 2008). The State is not required to show that the "use or intended use causes death or serious bodily injury," but that the "use or intended use is capable of causing death or serious bodily injury." *Id.* The injuries suffered can be a sufficient basis to infer that an attacker used a deadly weapon. *Id.* at 691-92.

The State alleged that appellant "did then and there intentionally, knowingly, or recklessly cause bodily injury to Kandice Lemley by hitting her with a bottle, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a bottle, during the commission of said assault."

**C. Analysis**

The question is not whether Lemley actually suffered serious bodily injury or death, but rather whether the empty glass beer bottle in the manner of its use or intended use by appellant was capable of causing death or serious bodily injury to her. *See Enriquez v. State*, 826 S.W.2d 191, 193 (Tex. App.–El Paso 1992, no pet.). Lemley testified that after she broke free of appellant's grasp, he struck her on the back with an empty glass beer bottle, causing her to feel pain. When appellant hit her with the bottle, he hit her with it while holding it in his hand.

Furthermore, Deputy Harvey collected an empty beer bottle at the scene, which was introduced as State's exhibit 32. When the prosecutor asked Deputy Harvey, "This State's Exhibit 32, is a beer bottle like this, depending on how it's used, capable of causing serious bodily injury or even death?", she said, "Yes." When the prosecutor asked Officer Bentley, "Is a beer bottle, depending on how it's used and how it's intended to be used, is it capable of causing serious bodily injury or death?", he said, "Yes, sir, it

7

can." When the prosecutor followed up and asked Officer Bently, "Would it be reckless to hit someone with a beer bottle?", he said, "Yes, sir."

The case of *Hays v. State*, 728 S.W.3d 804 (Tex. Crim. App. 1987) (op. on reh'g), is helpful in resolving the issue before us. In that case, the complainant and his friends parked their vehicles in a parking space assigned to Hays and his wife. *Id*. at 806. Hays argued with the complainant and his friends about the parking space, and after harsh words were exchanged, Hays returned to his apartment where he stuck a pistol in the waistband of his pants. *Id*. He then returned to the scene of the incident and struck the complainant with the pistol. *Id*. The complainant then struck Hays with an empty Coke bottle. *Id*. Feeling that his life was threatened, Hays grabbed his pistol, and the two struggled for control of the weapon, during which the pistol discharged, wounding the complainant. *Id*. At his trial, Hays requested the court to instruct the jury on the law of self-defense applicable to a situation where an accused has to use deadly force to defend against deadly force. *Id*. The court denied the requested instruction. *Id*.

Hays appealed his aggravated-assault conviction to the court of appeals, which stated, "that there was 'no evidence that [Hays] was reasonably warranted in drawing a gun against the complainant when he was not armed.'" *Id*. at 807. On appeal to the court of criminal appeals, Hays "maintain[ed] that the complainant was indeed armed because he wielded the Coke bottle as a club." In holding that the trial court erred in denying Hays' requested instruction, the court of criminal appeals stated, "[I]t is clear to us that the complainant was indeed armed. The complainant's own testimony reveals that he struck [Hays] with the Coke bottle, clearly an object capable of causing death or

8

serious bodily injury."   *Id.* at 808.

After reviewing all of the evidence in the light most favorable to the verdict, we hold that the jury, as rational trier of fact, could have found beyond a reasonable doubt that an empty glass beer bottle, when used in the manner exhibited by appellant, was capable of causing death or serious bodily injury to his intended victim.   *See Hays*, 728 S.W.2d at 808 (stating that a Coke bottle is "clearly an object capable of causing death or serious bodily injury.").   We hold, therefore, that the evidence is legally sufficient to prove beyond a reasonable doubt that appellant used or exhibited a deadly weapon during the commission of the offense.   Issues one and two are overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 10th
day of February, 2011.

9