

NUMBER 13-15-00224-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**PATRICIA GONZALEZ PUENTE,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

On appeal from the 332nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Benavides

Appellant Patricia Gonzalez Puente appeals her conviction for aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West, Westlaw through 2015 R.S.). By one issue, Puente asserts that the evidence is insufficient to sustain her conviction. We affirm.

# I.  BACKGROUND

On the morning of January 19, 2014, fifty-seven-year-old Julia Ann Penny drove to work in McAllen and reached the intersection of Dove Avenue and Bicentennial Boulevard.   Penny stopped her car and intended to turn east onto Dove.   As she waited to turn, Penny saw a "big truck" that was "fast approaching" from the opposite direction of Bicentennial.   Penny testified that the truck, driven by Puente, began to move into her turn lane and Penny had "less than a minute to respond" before it crashed into Penny's vehicle.   Penny testified that:   (1) the force of the impact turned her car to face west onto Dove; (2) the airbags of her car deployed; (3) her windshield was "crashed"; and (4) her driver's-side door would not open.

Penny testified that following the crash, she was able to move her head slightly to "see my surroundings" and had to exit her car through the passenger door.   Penny recalled that her right foot "was dangling" and that the heel of that foot was "crushed[,] broken[,] and shattered."   Penny also stated that the officer who later responded to the scene told her that she was "losing a lot of blood."   Penny was transferred to a nearby hospital, where she learned that she had a broken vertebrae, and "three protruding [vertebrae]," and that she would have to undergo two surgeries on her foot, as a result of the collision.

Romel Garcia, an off-duty McAllen firefighter, was on his way to work that morning and witnessed the entire crash.   Garcia testified that Puente's vehicle caught his attention because of "the speed the vehicle was coming at."   Garcia estimated that Puente was travelling "between 50 to 60 miles [per hour]" prior to the crash.   Following

the collision, Garcia approached Puente's car first and described Puente as "a little bit out of it" when he told her that she had been involved in an accident. According to Garcia, Puente told him that she had dropped her phone in the car and was "fumbling for it." Garcia testified that Puente did not seem injured, so he left to attend to Penny's vehicle, where he struggled to open Penny's car doors.

McAllen Police Officer Christopher Florez, who responded to the scene of the crash, also testified. Officer Florez recalled speaking to Puente that morning and observing that Puente's breath smelled of alcohol. According to Officer Florez, Puente told him that she had gone out the night before and had consumed alcohol; however, her last drink was between 11 p.m. and midnight and she went to a friend's house to sleep after consuming that drink. According to Officer Florez, Puente also told him about dropping her cell phone in her car before the crash occurred. Officer Florez opined that alcohol and Puente's high rate of speed were contributing factors to this collision.

The State indicted Puente for one count of intoxication assault, a third-degree felony, *see id.* § 49.07 (West, Westlaw through 2015 R.S.), and one count of aggravated assault, a second-degree felony. *See id.* § 22.02. A jury found Puente guilty of the aggravated assault charge, but acquitted her of intoxication assault. The trial court assessed Puente's punishment at ten years' imprisonment with the Texas Department of Criminal Justice's Institutional Division. The trial court then suspended Puente's sentence and placed her on community supervision for ten years with various conditions and ordered her to pay $73,000 in restitution. This appeal followed.

## II. SUFFICIENCY CHALLENGE

By her sole issue, Puente asserts that the evidence is insufficient to support a

finding beyond a reasonable doubt that Puente "had the requisite culpable mental state to find [her] guilty of aggravated assault."

## A.      Standard of Review and Applicable Law

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.   *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).   In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.   *Brooks*, 323 S.W.3d at 899.   It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilt is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge.   *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).   Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*   Under a hypothetically correct jury charge in this case, Puente is guilty of aggravated

assault if she intentionally, knowingly, or recklessly caused serious bodily injury to Penny, or intentionally, knowingly, or recklessly caused bodily injury by using or exhibiting a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01; 22.02(a)(1) (West, Westlaw through 2015 R.S.).

## B. Discussion

Puente solely argues that the evidence is insufficient to establish that she acted with the reckless culpable mental state[1] to sustain her conviction for aggravated assault. We disagree.

> A person acts recklessly, or is reckless, with respect to circumstances surrounding [her] conduct or the result of [her] conduct when [she] is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c) (West, Westlaw through 2015 R.S.). Recklessness, unlike the culpable mental state of criminal negligence, which depends upon a morally blameworthy failure to appreciate a substantial and unjustifiable risk, *see id.* § 6.03(d), depends upon a more serious moral blameworthiness—that is, the actual disregard of a known substantial and unjustifiable risk. *See Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007). At the heart of reckless conduct is a conscious disregard of the risk created by the actor's conduct. *Id.*

---

[1] Although a hypothetically correct jury charge in this case allows for a conviction when an actor's culpable mental state is intentional, knowing, or reckless, *see* TEX. PENAL CODE ANN. §§ 22.01; 22.02(a)(1) (West, Westlaw through 2016 R.S.), Puente argues that no evidence supported a finding of intentional or knowing conduct, so she challenges the evidence solely on the reckless culpable mental state. The State appears to concede this point by analyzing the issue only under a reckless culpable mental state, and we likewise agree. Therefore, we will analyze Puente's sufficiency challenge under a reckless culpable mental state. *See* TEX. R. APP. P. 47.1.

5

The mere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences may happen to be, do not suffice to constitute recklessness. *Id.* Instead, recklessness requires the defendant to actually foresee the risk involved and to consciously decide to ignore it. *Id.* The Texas Court of Criminal Appeals has described a reckless mental state as one in which a defendant has a "devil may care" or "not giving a damn" attitude toward the risk associated with the conduct. *Id. at* 751–52. A critical component of reckless conduct involves a combination of an awareness of the magnitude of the risk and the conscious disregard for consequences. *See id.* at 752–53. A defendant charged with reckless conduct must have a callous disregard of risk, and not awareness *vel non* of risk. *Id.* In reviewing whether an act or omission involves a substantial and unjustifiable risk, we must examine the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight. *Id.* at 753. Furthermore, whether a defendant's conduct involves an extreme degree of risk must be determined by the conduct itself and not by the resultant harm. *Id.* Moreover, criminal liability cannot be predicated on every careless act merely because its carelessness results in death or injury to another. *Id.*

In addressing the sufficiency of evidence to prove criminal recklessness, it is not enough to provide jurors with a set of legally correct definitions and then simply turn them loose and accept whatever they decide. *Id.* Instead, there are more intermediate and progressively more demanding burdens of production that must be met by the State, as a matter of law, before the fact-finding process is even ratcheted up from one to the next higher level of possible culpability. *Id.* Thus, the State cannot be permitted to submit

6

its case to the jury unless it has offered a *prima facie* case of a defendant's actual, subjective "disregard [of] a substantial and unjustifiable risk" which is "of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* The incremental risk and mens rea that may transform mere civil negligence into criminal negligence and then possibly criminal recklessness are, although elusive, substantive elements with unique burdens of production that must be satisfied as a matter of law. *Id.* However, we re-emphasize that in our review, we view the evidence in the light most favorable to the verdict, and we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Brooks*, 323 S.W.3d at 899.

The record reveals that Penny testified that she observed Puente's vehicle "fast approaching" her vehicle on Bicentennial. Furthermore, Garcia, who also saw Puente's vehicle approaching the intersection, estimated that Puente was traveling between fifty and sixty miles per hour. While we acknowledge that speeding by itself is not necessarily reckless conduct, *see Gill v. State*, 981 S.W.2d 517, 519 (Tex. App.—Beaumont 1998, pet. ref'd), other evidence coupled with her excessive speed showed that Puente acted recklessly leading up to the crash with Penny. Garcia testified that shortly after the accident, Puente told him that she had dropped her cell phone while driving and was "fumbling for it." Officer Florez testified that Puente also told him about how she had dropped her cell phone and attempted to reach for it as she drove down Bicentennial. We also note that Officer Florez observed that Puente smelled of alcohol following the crash. After viewing the evidence in the light most favorable to the verdict

7

and deferring all credibility and weight determinations to the jury, a rational fact finder could have found beyond a reasonable doubt that Puente acted recklessly when she drove at an excessive speed after consuming alcohol and "fumbl[ed]" for her dropped cell phone immediately prior to crashing into Penny's vehicle.   *See Winfrey*, 393 S.W.3d at 768.   We overrule Puente's sole issue.

### III.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
21st day of July, 2016.