

**NUMBER 13-10-00383-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ERNEST PRICE,**                                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                          **Appellee.**

**On appeal from the 94th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellant Ernest Price challenges his conviction after a bench trial for burglary of a habitation, a second-degree felony.   *See* TEX. PENAL CODE ANN. § 30.02 (a)(1), (c)(2) (West 2003).   By one issue, Price argues that the evidence was legally and factually insufficient to support his conviction.   We affirm.

# I. BACKGROUND

Price was indicted as follows: "on or about December 16, 2009, in Nueces County, Texas, [Price] did then and there, with intent to commit theft, enter a habitation, without the effective consent of Michelle Ayala, the owner thereof . . . ." The indictment also stated that Price had been previously convicted of two felonies. Price pleaded not guilty, and the case was tried before the court.

At the bench trial, the State presented the following testimony. First, Ayala testified that on the morning of December 16, 2009, she returned home from taking her son to school and discovered someone in her house. Ayala testified that she glimpsed the intruder through the door to her daughter's bedroom and that the intruder was male and wearing a black shirt and khaki shorts. She could not say for certain that the intruder was Price, but stated that Price matched the intruder's build, height, and race. After glimpsing the intruder through the door, Ayala went back out the front door, called 9-1-1, and waited on the front sidewalk for the police to arrive. When the police arrived, Ayala waited outside while they searched the house, and when no one was found in the house, Ayala went inside with the police and discovered that her daughter's television had been moved from its stand to the bed and that her daughter's Xbox and some games were missing. The window in her son's bedroom was open, the screen was "busted," and it appeared to Ayala as if someone had "busted" out of that window. Ayala testified that it had been raining that morning and that her backyard was muddy. When the police returned the items they eventually found with Price in a search later that morning, Ayala identified them as her daughter's Xbox, games, and High School Musical wallet. Ayala

2

testified that her backyard bordered an apartment complex and that, if one were to jump over her back fence, he would land in the apartment complex parking lot.

Shakema Hatton testified next. She testified that she lives in the Northside Manor Apartments, which are situated behind Ayala's house. Hatton knows Price from around the neighborhood. On the morning of December 16, 2009, Price came to her apartment and asked if he could leave an Xbox and some games with her. When Price was leaving Hatton's apartment, the police arrived. Hatton saw the police recover a wallet from Price.

Melvin Goce, an officer with the Corpus Christi Police Department (CCPD), was dispatched to the burglary at Ayala's house. Officer Goce testified that the side door to Ayala's house was kicked in and the back window was open. Officer Goce testified that it was muddy at Ayala's house. Officer Goce radioed a description of the stolen items—the Xbox and games—to the officers searching for the intruder. Officer Goce testified that he eventually went to the apartment where Price was found and located the Xbox and games there. Price made no statements or comments to Officer Goce after his arrest. Officer Goce and his trainee, CCPD Officer Elizabeth Leal, drove Price to the processing center to be booked.

CCPD Officer Jeff Davis testified that he was also dispatched to the burglary but traveled directly to Northside Manor Apartments to search for the suspect. Officer Davis testified that he followed a set of muddy footprints that started in Ayala's backyard through the apartment complex and that the footprints ended at a third-floor apartment where Price was discovered. Officer Davis observed a wallet being recovered from Price; he

3

testified that it was a colorful little girl's wallet with "something like" a cartoon on it. Officer Davis testified that Price's shoes were muddy when he was arrested and that the tread on his shoes was similar to the tread in the footprints he followed. Officer Davis then went to Ayala's house, where he also noticed that the door had been kicked in. Officer Davis looked out the back bedroom window and noted that there were footprints originating from directly below the window and that those footprints were the same ones he followed through the apartment complex.[1]

CCPD Officer Robert Pena testified that when he arrived at Ayala's house, he noticed the screen was off the back window and supposed that the burglar left through that window. Officer Pena testified that there were footprints outside that window that led to Ayala's back fence that bordered the apartment complex parking lot. The footprints traveled from the window, through the backyard, and then continued on the other side of the fence in the complex parking lot. Officer Pena then drove around to the apartment complex and followed the footprints up to the apartment where the other officers had already discovered Price. Officer Pena recovered a black High School Musical wallet from Price, which he described as "[a] little girl or boy's wallet."

Finally, Officer Leal, who was Officer Goce's trainee at the time of the burglary investigation, testified that she and Officer Goce were the first to arrive at the scene. Ayala told Officer Leal that the burglar was wearing "all black." With Ayala's assistance, they determined that the Xbox and games were missing from Ayala's daughter's room. Officer Leal determined that "[t]he east back door" was the point of entry because "[i]t was

---

[1] CCPD Officer Joe Harrison testified similarly regarding the footprints originating "right outside" the back window of Ayala's house.

4

kicked in" and that "[t]he west back window was the exit point because it was open and she "saw a footprint outside the window." Officer Leal then went to the apartment where Price was found and discovered the Xbox and games there.

At the conclusion of the evidence, the trial court convicted Price of the indicted offense and sentenced him to twenty-five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Although Price challenges both the legal and factual sufficiency of the evidence, in light of the Texas Court of Criminal Appeals' 2010 opinion in *Brooks v. State*, we will conduct only a legal sufficiency review. *See* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). *Brooks* held that there is "no meaningful distinction between the . . . legal-sufficiency standard and the . . . factual-sufficiency standard, and these two standards have become indistinguishable." *Id.* at 902. A legal sufficiency standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element in a criminal offense . . . ." *Id.* at 912.

When conducting a legal sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—not whether "it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). A legal sufficiency analysis requires the court to view all of the evidence in "a light most favorable to the verdict and to determine whether a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt." *Id.*; *see Laster v. State*,

275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight or credibility of the evidence, nor do we substitute our own conclusions for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc). Instead, we resolve any inconsistencies in the evidence in favor of the final judgment and consider whether the jury reached a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240. As indicted in this case, a person is guilty of burglary of a habitation if, "without the effective consent of the owner, the person . . . enters a habitation . . . with intent to commit . . . theft . . . ." TEX. PENAL CODE ANN. § 30.02(a)(1).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Kuciemba v. State*, 310

6

S.W.3d 460, 462 (Tex. Crim. App. 2010). "'[T]he standard of review on appeal is the same for both direct and circumstantial evidence cases.'" *Kuciemba*, 310 S.W.3d at 462 (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). Further, the law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. So long as "the verdict is supported by a reasonable inference, it is within the province of the fact[]finder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 323.

## III. DISCUSSION

By his sole issue, Price argues that the evidence was insufficient to support his conviction. Specifically, Price argues that: his possession of the stolen items alone does not prove his guilt; the testimony regarding the muddy footprints was too "weak" to pinpoint Price as the perpetrator; and, generally, that the State's case "consist[ed] of nothing more than circumstantial evidence."

First, "a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary." *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007) (citations omitted). There was no evidence at trial explaining Price's possession of the Xbox, games, and High School Musical wallet that Ayala identified as her daughter's possessions. And without such an explanation, we cannot agree with Price that his possession of those items did not permit the trial court to infer that he was the one that committed the burglary of Ayala's house. *See id.*

7

Second, the muddy footprints were strong circumstantial evidence of Price's guilt. The testimony by multiple officers established that a set of tracks ran directly from Ayala's back window, through her back yard, continued over the fence and into the apartment complex, and then through the complex up to the apartment where Price was discovered. Although the State did not call any experts to testify about the footprints, we conclude that the subject was appropriate to be established by the lay testimony of the police officers who conducted the search for the burglary suspect. *See* TEX. R. EVID. 701; *see also Rodgers v. State*, 205 S.W.3d 525, 532 (Tex. Crim. App. 2006) (noting that lay witness testimony about footprints or tracks is generally admissible). Moreover, the fact finder is permitted to "use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when giving effect to the inferences that may be reasonably drawn from the evidence," which is what we presume the trial court did here in crediting the officers' testimony. *See Rodriguez v. State*, 191 S.W.3d 428, 437 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citation omitted). We are thus unpersuaded by Price's argument that this evidence was too weak to support his conviction.

Third, contrary to Price's apparent contention that the State's circumstantial evidence alone was insufficient to prove his guilt, it is well-established that a conviction can be supported solely by circumstantial evidence because it is as probative as direct evidence under the law. *See Kuciemba*, 310 S.W.3d at 462; *Hooper*, 214 S.W.3d at 13. Here, as described above, there was ample circumstantial evidence connecting Price to the crime. Price's unexplained possession of the stolen goods, the muddy footprints leading from Ayala's home to the apartment where Price was found by police, and

8

Hatton's testimony that Price asked her to hold an Xbox and some games at her apartment shortly after the burglary permitted the fact finder to infer that Price was the person who committed the burglary. This evidence combined with Ayala's description of the burglar's clothes, height, build, and race—descriptions that matched Price's appearance at the time he was apprehended shortly after the burglary was reported—were sufficient to prove that Price committed the burglary.[2]

Viewing the foregoing in the light most favorable to the verdict, we cannot conclude that the trial court was irrational in determining beyond a reasonable doubt that Price entered Ayala's habitation with the intent to commit theft. *See Jackson*, 443 U.S. at 318-19; *see also* TEX. PENAL CODE ANN. § 30.02(a)(1). Thus, the evidence supporting Price's burglary conviction was legally sufficient. Price's sole issue is overruled.

## IV.  CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

---

[2] With regard to the identification of Price, Price contends that "no eyewitness got a good look at whoever the burglar was" and that Ayala "only testified that she got a general look at the burglar and was able to tell nothing more than he was a black male and tall." Based on this, Price argues that the State failed to prove that Price "was actually the burglar in this case." We disagree that the evidence identifying Price was insufficient. As described above, there was ample circumstantial evidence connecting Price to the burglary. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Regardless, the trial court, as fact finder, was the sole judge of the facts, the credibility of the witnesses, and the weight given to the evidence, and we find no reason to disturb the conclusion of the trial court in this case based on the evidence we have reviewed. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Delivered and filed the
2nd day of June, 2011.