**Noel Ronaldo VILLARREAL,**
**Appellant,**

v.

**The STATE of Texas.**

**No. PD–0984–08.**

Court of Criminal Appeals of Texas.

April 29, 2009.

Rehearing Denied June 24, 2009.

---

Marc F. Gault, Fort Worth, for Appellant.

1. At the time of appellant's offense, Texas Penal Code § 25.07(a)(1) provided, in relevant part, that "[a] person commits an offense if, in violation of [a protective] order issued ... under Article 17.292, Code of Criminal Procedure, ... the person knowingly or intentionally commits family violence." Texas Penal Code § 25.07(b), in turn, provided that, "[f]or the purposes of this section: 'Family violence' [has] the meaning assigned by Chapter 71, Family Code." In addition to those Texas Penal Code sections, the following Texas Family Code sections are relevant to our discussion:

§ 71.003:
" 'Family' includes individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code, individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together."
§ 71.004:
" 'Family violence' means:

Debra Ann Windsor, Asst. Criminal District Atty., Fort Worth, Jeffrey L. Van Horn, State's Atty., Austin, for State.

HOLCOMB, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The principal question presented in this case is whether the evidence adduced at appellant's trial was legally sufficient to support his conviction for violation of a protective order. We hold that the evidence was legally sufficient, and we affirm the judgment of the court of appeals.

On June 30, 2006, a Tarrant County grand jury returned an indictment charging appellant with violation of a protective order under Texas Penal Code § 25.07(a)(1).[1] The indictment alleged, in relevant part, that, on or about March 2, 2005, appellant:

(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;
(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family or household toward a child of the family or household; or
(3) dating violence, as that term is defined by Section 71.0021."
§ 71.005:
" 'Household' means a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other."
§ 71.006:
" 'Member of a household' includes a person who previously lived in a household."
§ 71.0021:
"(a) 'Dating violence' means an act by an individual that is against another individual with whom that person has or has had a

"did intentionally or knowingly in violation of an order of the Arlington Municipal Court ... issued on February 8th, 2005, ... commit an act of family violence, namely intentionally causing bodily injury to Shannon Love, by striking her with his hand or pushing her with his hand, and said act of family violence was intended to result in physical harm, bodily injury or assault."

The indictment also alleged, for purposes of punishment enhancement, that appellant had two prior felony convictions.

Trial under the indictment was had before a jury on appellant's plea of not guilty. At the guilt stage of trial, the State presented five witnesses and several exhibits.[2] The State's witnesses included Rosalia Maddock, Judge of the Arlington Municipal Court and a magistrate of Tarrant County; Shannon Love, the complainant; David Paden, an eyewitness to the offense; Sidney Turner, a second eyewitness to the offense; and Greg Wilkinson, an Arlington police officer.

The State's evidence, viewed in the light most favorable to the jury's verdict, and reasonable inferences therefrom, established the following: In January 2005, appellant and Love began an intimate dating relationship. They maintained separate residences, but occasionally each of them spent the night with the other at the other's residence.[3] Their relationship eventually soured. On or about February 8,

2005, appellant was arrested for committing some type of family violence against Love.[4] Shortly after appellant's arrest, he was taken before Judge Maddock. At that time, Judge Maddock, acting under Article 17.292 of the Texas Code of Criminal Procedure, issued an emergency protective order enjoining appellant, for a period of 61 days, from committing further family violence against Love and certain named members of her family. Judge Maddock gave a copy of the protective order to appellant and explained to him orally what it prohibited.[5] On March 2, 2005, just 22 days after Judge Maddock issued the protective order, appellant again committed family violence against Love, to wit: he assaulted and injured her in the parking lot of an Arlington bar.

The protective order, admitted in evidence as State's Exhibit Four, was two pages in length and entitled "Magistrate's Order for Emergency Protection–Family Violence." It stated, in relevant part, that:

"On 2/8/05 [appellant] appeared before the undersigned Magistrate after [appellant's] arrest for an offense involving family violence and the Court at a post-arrest hearing as provided by Art. 17.292 of the Code of Criminal Procedure considered entering an Order for Emergency Protection on its own motion...."

---

dating relationship and that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself. (b) For purposes of this title, 'dating relationship' means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature...."

2. Appellant presented no witnesses.

3. There was no evidence presented at trial suggesting that appellant was ever a member of Love's family or household.

4. The record does not reflect the nature of the family violence that appellant committed against Love on or about February 8, 2005.

5. The record does not reflect whether appellant asked any questions about the protective order.

"After considering the evidence, the Court enters this Order to protect Shannon Love, who is the victim of the offense, and the following named members of the victim's family or household....

"It is hereby ordered that effective immediately and for the next 61 days, [appellant] ... is prohibited from committing family violence."

On page two of the protective order, below Judge Maddock's signature, the following definitions appeared:

"*Family violence* means an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself. *Family violence* includes physical injury that results in substantial harm to the child or the genuine threat of substantial harm from physical injury to the child, including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent, guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm.[6]

"*Family* includes individuals related by blood or marriage, individuals who are former spouses of each other, individuals who are the biological parents of the same child, without regard to marriage, and a foster child and foster parent, whether or not those individuals reside together.

"*Household* means a unit composed of persons living together in the same dwelling, whether or not they are related to each other. Member of a household includes a person who previously lived in a household." (Emphases in original.) [7]

The trial court, in its jury charge, instructed the jurors that "a person commits the offense of violation of a protective order if, in violation of an order issued under Article 17.292, Code of Criminal Procedure, he knowingly or intentionally commits family violence and the person has violated the protective order by committing an assault." The court also instructed the jurors, over appellant's objection, that " '[f]amily violence' means dating violence as hereinafter defined." The court then defined the terms "dating violence" and "dating relationship" in accordance with the definitions in Texas Family Code § 71.0021. *See* footnote one, *supra.*

The jury, after deliberating, found appellant guilty as charged in the indictment. The trial court, after hearing additional evidence, assessed appellant's punishment, enhanced by two prior felony convictions, at imprisonment for sixty years.

On direct appeal, appellant brought three points of error, arguing that: (1) the

---

6. The definition of "family violence" on page two of the protective order corresponded with the definition in Texas Family Code § 71.004 as it existed before September 1, 2001. Effective September 1, 2001, the Texas Family Code definition of "family violence" included "dating violence." *See* footnote one, *supra.* It appears that whoever drafted the protective order used outdated computer software. On the bottom of each page of the protective order there appears a footer reading "famvio

09/97." That suggests that the software in question was created or last updated in September 1997.

7. The language used in the protective order, taken as a whole, implies that appellant was a member of Love's family or household, but we suspect that that was simply a consequence of the drafter's use of outdated software. *See* footnote six, *supra.*

evidence adduced at trial was legally insufficient to support his conviction, (2) the evidence adduced at trial was factually insufficient to support his conviction, and (3) the trial court erred in instructing the jury that "family violence" meant "dating violence" and in defining for the jury the terms "dating violence" and "dating relationship." With respect to his evidentiary-insufficiency points, appellant noted first that, "in [this] case, the protective order ... limit[ed] the definition of 'family violence' to actions involving family and household members." [8] Appellant then argued:

"No rational trier of fact could have found, beyond a reasonable doubt, that [he] committed an act against a member of his family or household. [9] Consequently, no rational trier of fact could have found, beyond a reasonable doubt, that [he] violated the protective order's prohibition against committing family violence. If evidence of such a violation does exist ..., it is so weak that the verdict seems clearly wrong or manifestly unjust, and the verdict is against the great weight and preponderance of the evidence."

With respect to his jury-charge point, appellant argued that the trial court erred because "the protective order excluded dating violence from [its] definition of family violence, and [evidence of] dating violence, therefore, is not sufficient to support a conviction for violating the protective order's family violence prohibition."

The court of appeals overruled appellant's points of error and affirmed the trial court's judgment of conviction. *Villarreal v. State*, No. 02–06–00393–CR, 2008 WL 1777982 (Tex.App.-Fort Worth 2008) (not designated for publication). With respect to appellant's evidentiary-sufficiency points, the court of appeals first rejected his argument that the protective order limited the definition of "family violence" to actions involving family and household members and that, therefore, evidence of dating violence was insufficient to support a conviction for violating the protective order's prohibition of family violence:

"Appellant argues that the protective order prohibited him from committing family violence as it regards members of the same household and members of a family but not family violence in terms of dating violence. Appellant is correct that the definition contained in State's Exhibit Four, the magistrate's order for emergency protection family violence, does not include the definition of family violence in terms of dating violence. The portion of the 'order' to which Appellant refers, however, is the portion appended after the order itself and after the requisite warning. It is part of neither the order nor the warning, and Appellant has directed us to no authority providing otherwise." *Id.* at 5 (footnotes omitted).

The court of appeals then explained that the State's burden at trial was to prove that appellant intentionally or knowingly, in violation of a protective order, committed an act of "family violence" as that term was defined in the Texas Family Code. *Id.* at 6–7. Finally, the court of appeals, after reviewing the evidence presented at trial and after summarizing the relevant law, stated, "Applying the appropriate standards of review, we hold that the evidence is both legally and factually sufficient to support the trial court's judgment." *Id.* at 12 (footnote omitted).

With respect to appellant's jury-charge point of error, the court of appeals ex-

8. *See* footnotes six and seven, *supra.*

9. *See* footnote three, *supra.*

plained that the trial court did not err in instructing the jury on "dating violence" because "section 71.004 of the family code defines family violence, and subsection (3) of that section specifically includes dating violence as part of the definition of family violence." *Id.* at 13.

Appellant later filed a petition for discretionary review, asserting five grounds for review, all of which we granted. In his petition and accompanying brief, appellant reiterates the arguments that he made below: (1) the evidence adduced at trial was legally insufficient to support his conviction (grounds for review numbers one, four, and five), (2) the evidence adduced at trial was factually insufficient to support his conviction (ground for review number two), and (3) the trial court erred in instructing the jury that "family violence" meant "dating violence" and in defining for the jury the terms "dating violence" and "dating relationship" (ground for review number three).

■■■ We turn first to appellant's grounds for review arguing legal insufficiency. Consistent with the Fourteenth Amendment's guarantee of due process of law, a defendant may not be convicted and deprived of his liberty except upon proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In assessing the "legal" sufficiency of the evidence, under the Fourteenth Amendment, to support a conviction, an appellate court must consider all of the record evidence in the light most favorable to the verdict, and must determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct.

2781, 61 L.Ed.2d 560 (1979). In that analysis, the elements of the offense are defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Ibid.*

■■ The hypothetically correct jury charge for this case would state the elements of the charged offense as follows: (1) appellant (2) in violation of an order issued on February 8, 2005, by the Arlington Municipal Court under Article 17.292, Code of Criminal Procedure (3) at a proceeding that appellant attended[10] (4) knowingly or intentionally (5) caused bodily injury to Shannon Love by striking her with his hand or pushing her with his hand (6) and said act was intended to result in physical harm, bodily injury, or assault. Appellant argues that, given the evidence adduced at his trial, no rational jury could have found him guilty of the second element beyond a reasonable doubt. Appellant does not challenge the sufficiency of the evidence to support the other elements. He points out correctly that the definition of "family violence" on page two of Judge Maddock's protective order is limited to acts involving members of a family or household and does not include dating violence. He also points out correctly that the evidence at trial showed that he and Love were in a dating relationship, as that term is defined in the Texas Family Code, and did not show that he was a member of Love's family or household.

---

**10.** *See Harvey v. State,* 78 S.W.3d 368, 372–73 (Tex.Crim.App.2002).

We are not persuaded by appellant's argument. A rational jury, reading Judge Maddock's protective order as a whole, and considering it in the context of all the other evidence as well as the trial court's instructions regarding the meaning of "family violence," [11] could have found the following facts beyond a reasonable doubt: (1) on or about February 8, 2005, appellant was arrested in Tarrant County for some type of family violence against his girlfriend, Shannon Love; (2) on that same date, Judge Maddock, of the Arlington Municipal Court, at a hearing that appellant attended, issued a protective order under Article 17.292 naming appellant as the subject and naming Love and her family as the protected parties; (3) Judge Maddock, on page one of the order, explicitly prohibited appellant from committing further "family violence" against Love or her family; and (4) despite the deficient definition of "family violence" on page two of the order, any reasonable person in appellant's position reading the protective order would have understood that it prohibited him from committing violent conduct against Love or her family. From those facts, a rational jury could have further found, beyond a reasonable doubt, that appellant's violent conduct against Love on March 2, 2005, was "in violation of" the protective order.

Although we agree with the court of appeals that the evidence adduced at appellant's trial was legally sufficient despite the definition of "family violence" contained on page two of the protective order, we do not agree with the reasoning employed by the court of appeals. The court of appeals dismissed appellant's argument concerning the deficient definition simply by holding that that definition was not part of the protective order, whereas we conclude that the proper analysis is to determine whether a rational jury, despite the deficient definition, could conclude beyond a reasonable doubt that appellant's assaultive conduct on March 2, 2005, was in violation of the order.

We overrule grounds for review numbers one, four, and five.

 We turn next to appellant's ground for review arguing factual insufficiency. Our state constitution allows the courts of appeals (and this Court in direct appeal of capital murder cases), upon request, to reverse a judgment of conviction and remand for a new trial when the evidence, although legally sufficient, is nevertheless too weak to withstand scrutiny or preponderates greatly against the finding of guilt. *Watson v. State,* 204 S.W.3d 404, 414 (Tex.Crim.App.2006). Once a court of appeals has determined such a claim of "factual" insufficiency, this Court may not conduct a de novo review of the lower court's determination. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997). Our review is limited to determining whether the lower court applied the correct standard of review and considered all of the relevant evidence. *Lancon v. State,* 253 S.W.3d 699, 704 (Tex.Crim.App.2008). In the instant case, appellant asks us, in effect, to conduct a de novo review of the court of appeals's determination of his factual-insufficiency claim. We cannot do that. We therefore dismiss ground for review number two as improvidently granted.

 We turn finally to appellant's ground for review arguing jury-charge error. As we noted previously, appellant complains that the trial court erred in

---

11. The trial court's instructions were not erroneous, despite appellant's claim to the contrary. *See* discussion, *infra.*

instructing the jury, over his objection, that "family violence" meant "dating violence" and in defining for the jury the terms "dating violence" and "dating relationship." *See* footnote one, *supra.*

■ A trial court is statutorily obligated to instruct the jury on the law applicable to the case. Tex.Code Crim. Proc. art. 36.14. As Professors Dix and Dawson have explained, that statutory obligation "requires that each statutory definition that affects the meaning of an element of the offense must be communicated to the jury." G. Dix & R. Dawson, *Texas Practice: Criminal Practice and Procedure* § 36.11 at 562 (2nd ed.2001). In the instant case, the grand jury, through its indictment, charged appellant with the offense of violation of a protective order, one element of which was the commission of "family violence" as that term was defined by the Texas Family Code. Because the Family Code definitions of "dating violence" and "dating relationship" affected the meaning of the "family violence" element of the offense, the trial court did not err in instructing the jury on those definitions. We overrule ground for review number three.

We affirm the judgment of the court of appeals.

KELLER, P.J., did not participate.

HERVEY, J., filed a concurring opinion, in which KEASLER, J., joined.

## CONCURRING OPINION

HERVEY, J., filed a concurring opinion in which KEASLER, J., joined.

Whether appellant's conduct of striking Shannon Love in the parking lot of the Hot Rods and Hoggs bar is a Class A misdemeanor or a third-degree felony turns on whether this conduct violated the February 8, 2005, protective order.[1] Appellant claims that this conduct did not violate the February 8th protective order and, therefore, is not a third-degree felony because the protective order prohibited this conduct only against a member of appellant's "family or household" and Love was not a member of appellant's "family or household."[2] Appellant claims that his conduct is a Class A misdemeanor because he only dated Love and the protective order did not prohibit him from committing "dating violence."[3]

The magistrate signed the protective order at a hearing during which appellant personally appeared after his arrest "for an offense involving family violence." The protective order states that it was intended to protect "**SHANNON LOVE,** who is the victim of the offense." (Emphasis in bold and capitalization set out in the protective order). Its stated definition of "family violence" prohibited appellant from committing "family violence" only against a member of his "family or household." The protective order also prohibited appellant from "**communicating in a threatening or harassing manner directly with SHANNON LOVE.**"[4] (Emphasis in bold

1. *See* § 25.07(a), Tex. Pen.Code ("in violation of an order" is an essential element of the offense of violating a protective order).

2. *See* § 71.004, Tex. Fam.Code (defining "family violence").

3. *See* § 71.0021, Tex. Fam.Code (defining "dating violence").

4. This apparently would include a prohibition against striking Love even without a consideration of the legal effect of the protective order's omission of "dating violence" in its definition of "family violence." *See Schmidt v. State,* 232 S.W.3d 66, 67 (Tex.Cr.App.2007) (actual striking can also constitute a threat to harm).

and capitalization set out in the protective order).

The magistrate (Judge Maddock), who signed the protective order, described the procedure "in giving notice that a protective order has been issued."

Q. [STATE]: Now, we were talking about the standard procedure that you have in giving notice that a protective order has been issued. Can you take the jury through that now?

A. [JUDGE MADDOCK]: Sure. When I do what we call magistration or arraignment, which is arraignments, that's what we blanket call it because it's a Class C. Again, it's actually the arraignment process. And I'm reading them why they're being held, what their charges are. If someone is also having a protective order, then I issue them the protective order at that point in time. And what I would have done in this case is, Mr. Villarreal, please-I've entered a protective order and for the next 61 days, please do not go within 300 feet of any residence, business, or place of employment of Shannon Love. Specifically do not go within 300 feet of 2701 Jewell Drive, Arlington, Texas 76016, or 608 East Division, Arlington, Texas 76011. In addition, in no way should you threaten or harass Shannon Love, Ashley Love, Robert Love, Donna Love, Misty Love, or Brandon Lindley. Finally, do not be in possession of a firearm. If you violate any term of this protective order, you could find yourself with further charges pending against you. And that's how I do it day in, day out.

* * *

Q. And after you go through what the emergency protective order means and what is prohibited, is there any kind of acknowledgment that the person has to give?

A. Along with their copy, what happens is I make copies of—the original is on top of the file. I will make a copy and leave it in the folder, and I put it on top and I'll say, I need you to sign—and that would be the third page of this exhibit. Please sign the page I've given to you to acknowledge that I have given you your photocopy of the protective order.

Q. In State's Exhibit 4, there is an acknowledgment page, is there not?

A. Yes, there is.

Q. And is it signed?

A. It is signed by—I signed it down at the bottom at the return and at the top it is signed by Mr. Villarreal.

* * *

Q. And who is the person who is protected in that protective order?

A. Shannon Love and then the children that I called out and the parents.

Q. What type of protective order is this?

A. This would have been issued—could have been for a Class A or-this type of protective order could have been for a Class A or for a felony assault.

* * *

Q. And when we were talking in general terms about protective orders earlier, you were telling us that not all contact is prohibited, so that the parties, Mr. Villarreal and Shannon Love, would have been able to meet at a mutually agreeable place?

A. Yes.

Q. What is prohibited is any assaultive behavior at that place?

A. Right.

Q. If like in this instance Mr. Villarreal, when he received his emergency pro-

tective order, if he had had questions about that, is that something you would have addressed?

A. Yes.

Q. And do you have any notations or anything to indicate that he had any questions about what he was being given?

A. No.

The evidence supports the theory upon which the case was submitted to the jury-that appellant and Love had recently been or were dating when appellant struck Love in the parking lot of the Hot Rods and Hoggs bar, where they had been drinking most of the evening. There is no evidence that Love was or had been a member of appellant's "family or household" when this occurred.[5]

Appellant claims that he could not have violated the protective order because its definition of "family violence" did not include "dating violence," which is the theory upon which he was convicted. Appellant argues that the sufficiency issue is whether "the relevant definition of family violence is found in the protective order" and not whether the evidence would support a finding that appellant "engaged in conduct that might be covered by one or more definitions" of "family violence" contained in the provisions of the Family Code.

It is axiomatic, but worth noting, that the State must prove Mr. Villarreal actually violated the protective order; it is not sufficient to show only that Mr. Villarreal engaged in conduct that might be covered by one or more definitions contained in [the provisions of the Family Code]. In other words, even if there is evidence of family violence, the State must still prove that the complained of conduct violated the terms of the protective order. Thus, the relevant definition of family violence is found in the protective order, and the protective order's definition does *not* include "dating violence."

(Citations to authority and to the record omitted; emphasis in italics in original).

I agree that the statute defining the offense required the State to prove "that the complained of conduct violated the terms of a protective order."[6] The issue, therefore, is whether the terms of the protective order, despite containing a definition of "family violence" that was not applicable to appellant's and Shannon Love's dating relationship, was reasonably specific enough to prohibit appellant from striking Shannon Love. *See Harvey v. State*, 78 S.W.3d 368, 371 (Tex.Cr.App. 2002) ("procedure for the issuance of the [protective] order requires that the person to whom the order applies will have (or at least will have been given) notice of its

---

5. The indictment alleged that Love was a member of appellant's "family or household" (not that they had been in a dating relationship) when appellant struck her in the Hot Rods and Hoggs parking lot. Appellant challenged this facially valid indictment (in particular, the allegation that Love was a member of appellant's "family or household") through a motion to quash the indictment, which the trial court denied. The State claimed in response to appellant's motion to quash that it could establish appellant's guilt by showing either that appellant and Love were in a dating relationship or that Love was a member of appellant's "family or household." The

State eventually abandoned the indictment allegation that Love was a member of appellant's "family or household" with the remaining allegation being that appellant violated the protective order by committing "family violence" against Love when he struck her in the Hot Rods and Hoggs parking lot.

6. *See* § 25.07(a) (defining offense of violation of a protective order); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (evidentiary sufficiency measured against the substantive elements of the offense as defined by state law).

terms").[7] If it was, then appellant is liable for the violation-of-a-protection-order offense for which he was convicted.

The protective order in this case clearly states that its issuance was necessary after appellant had been arrested for "an offense involving family violence" against Shannon Love. By specifically stating that the protective order was meant to protect Shannon Love and by specifically prohibiting appellant from, among other things, threatening and harassing Shannon Love, this protective order, despite any "defective" definition of "family violence," was reasonably specific enough to communicate to appellant that the protective order prohibited him from striking Shannon Love as he did on the night in question in the Hot Rods and Hoggs parking lot. That this protective order may not have informed appellant of the intricacies of the various definitions of "family violence" contained in the Family Code is of no consequence to the sufficiency analysis in this particular case.[8] The protective order was reasonably specific enough to communicate to appellant that the protective order was meant to protect Shannon Love from him which included a prohibition against striking her. For purposes of the sufficiency analysis in this case, that is all that was required.

I, however, disagree with the Court's opinion to the extent that it could be read as deciding that the protective order did not reasonably convey this information to appellant but that "any reasonable person in appellant's position reading the protective order" should nevertheless have gleaned this information. *See* Maj. op. at 328 ("despite the deficient definition of 'family violence' on page two of the order, any reasonable person in appellant's position reading the protective order would have understood that it prohibited him from committing violent conduct against Love or her family"). I also disagree with the Court's opinion to the extent that it suggests that the person to whom a protective order is directed must actually know the contents of the protective order in order to be liable for violating it. *See id.*[9]

---

**7.** *Compare Ex parte Rhodes,* 974 S.W.2d 735, 740 (Tex.Cr.App.1998) (an element of a constructive criminal-contempt conviction is a reasonably specific order) (citing and relying on *Ex parte Chambers,* 898 S.W.2d 257, 259 (Tex.1995)).

**8.** Appellant does not claim, for example, that he relied on the "family violence" definition in the protective order to believe that he would only be liable for a Class A misdemeanor when he struck Love in the Hot Rods and Hoggs parking lot. It should be noted that the protective order in this case states that a "violation of this order by commission of an act prohibited by the order may be a felony punishable by a fine of as much as $4,000 or by confinement in jail for as long as one year or both." This, however, reflects the punishment range for a Class A misdemeanor enhanced by a previous conviction for a "Class A misdemeanor or any degree of felony." *See* § 12.43(a), TEX. PEN.CODE. It does not reflect the punishment range for a third-degree felony. *See* § 12.33, TEX. PEN.CODE. In this case,

appellant was convicted of a third-degree felony and he was sentenced, as an habitual offender with two prior felony convictions, to 60 years in prison. *See* § 25.07(g), TEX PEN. CODE (offense of violating protective order is third-degree felony if the defendant "has violated the protective order by committing an assault"); § 12.42(d), TEX PEN.CODE.

**9.** *See Harvey,* 78 S.W.3d at 373 ("The State does not argue that the appellant could be held liable without having some knowledge of the order. It does say that the Court of Appeals went too far in requiring that the appellant 'knew its provisions.' We think the State is right, for we find no such requirement in the procedures for protective orders. The requirements are only that the respondent be given the resources to learn the provisions; that is, that he be given a copy of the order, or notice that an order has been applied for and that a hearing will be held to decide whether it will be issued. The order is nonetheless binding on the respondent who chooses not to

With these reservations, I join the Court's opinion.

read the order, or who chooses not to read the notice and the application and not to attend the hearing."); *but see Rhodes*, 974 S.W.2d at 740 (an element of a constructive criminal-contempt conviction for violating a reasonably specific order is "the wilful intent to violate the order"); *Chambers*, 898 S.W.2d at 259.