

NUMBERS 13-11-00071-CR
13-11-00103-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

EDWARD ANTHONY TELLEZ, **Appellant,**

**v.**

THE STATE OF TEXAS, **Appellee.**

### On appeal from the 36th District Court
### of Aransas County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Vela, and Perkes**
**Memorandum Opinion by Justice Rodriguez**

Appellant Edward Anthony Tellez challenges his conviction for unlawful possession of a firearm by a felon (appellate cause number 13-11-00071-CR) and the revocation of his community supervision because of that offense (appellate cause number 13-11-00103-CR). *See* TEX. PENAL CODE ANN. § 46.04(a)(1) (West Supp. 2010).

In one appellate issue relevant to both cause numbers, Tellez argues that the evidence was insufficient to support both his conviction and the revocation. We affirm.

## I. BACKGROUND[1]

In 2005, Tellez was convicted of aggravated assault. He was sentenced to seven years for that offense, but the sentence was suspended and he was given a seven-year term of community supervision. In December 2010, Tellez was indicted for unlawful possession of a firearm by a felon in connection with a home visit by his probation officer at which multiple guns were found at Tellez's court-listed residence in Rockport, Texas. The State also filed a motion to revoke Tellez's community supervision because of the discovered firearms, alleging as grounds that Tellez violated the law by possessing multiple firearms as a felon.

Tellez pleaded not guilty to the indicted offense and "not true" to the alleged violations of his community supervision. Both the offense and revocation were tried to the bench in the same proceeding. After the close of evidence, the trial court found Tellez guilty of unlawful possession of a firearm and sentenced him to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court also revoked Tellez's community supervision and sentenced him to the previously assessed seven-year term of confinement for the underlying aggravated assault conviction. The sentences were ordered to run concurrently. This appeal followed.

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

## II.  DISCUSSION

The trial court based both Tellez's conviction and his revocation on the same evidence presented at one proceeding.  By one issue challenging that evidence, Tellez argues that:  his firearm possession conviction was not supported by legally sufficient evidence; and the revocation of his community supervision was not supported by a preponderance of the evidence.

### A.  Legal Sufficiency

In a sufficiency review, courts examine the evidence in the light most favorable to the verdict to determine whether "any rational fact finder could have found guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he Jackson legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.").  This standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony.  *Brooks*, 323 S.W.3d at 899.  Appellate courts do not re-evaluate the weight and credibility of the evidence; they only ensure that the fact finder reached a rational decision.  *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  "Such a charge

3

is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240. In this case, Tellez committed the offense of unlawful possession of a firearm by a felon if he was convicted of a felony and possessed a firearm "after conviction and before the fifth anniversary of [his] . . . release from supervision under community supervision." *See* TEX. PENAL CODE ANN. § 46.04(a)(1). It is not disputed that Tellez had been convicted of a felony and that he was still under community supervision at the time the guns were found at his court-listed residence.

## B. Revocation

We review an order revoking community supervision for an abuse of discretion. *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). In a community supervision revocation hearing, the State need only prove its allegations by a preponderance of the evidence. *Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.—Corpus Christi 2003, no pet.); *Herrera v. State*, 951 S.W.2d 197, 199 (Tex. App.—Corpus Christi 1997, no pet.) (citing *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993)). This standard is met when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision as the State alleged. *In re B.C.C.*, 187 S.W.3d 721, 724 (Tex. App.—Tyler 2006, no pet.) (citing *Cobb*, 851 S.W.2d at 873). The trial court is the trier of facts in a revocation proceeding and the sole judge of the credibility of witnesses and the

weight to be given to the testimony. *Canseco*, 199 S.W.3d at 439. We examine the record of the revocation proceeding in the light most favorable to the trial court's ruling. *Id.*

## C. The Evidence

At the bench trial, Kori De Los Santos, Tellez's probation officer, testified that on November 15, 2010, she went to the address Tellez listed as his residence with the community supervision office for a home visit. The residence was located in Rockport, Texas. The purpose of the visit was to determine compliance with certain community supervision requirements, such as ensuring there were no alcohol, drugs, or firearms in the home. After Tellez consented, De Los Santos looked around the residence, and Tellez led De Los Santos to the room he identified as his bedroom. While in the bedroom, another probation officer, who had accompanied De Los Santos for the home visit, discovered a brown rifle case. When asked if he knew what was in the case, Tellez responded that he did not. Tellez then opened the case, in which De Los Santos observed a rifle with a scope.[2] De Los Santos testified that Tellez became agitated when the rifle was discovered.

Later on the same day, De Los Santos returned to the residence with an Aransas County Sheriffs Department deputy. With Tellez's consent, Deputy Leonardo Ovalle searched the residence and discovered a gun cabinet with numerous additional firearms and ammunition. Tellez told Deputy Ovalle that he did not own any of the guns. On cross-examination, Deputy Ovalle testified that no attempts were made to lift fingerprints

---

[2] Kyle Ruschhaupt, the other probation officer who accompanied De Los Santos, testified similarly about the events of the November 15 home visit.

5

from the guns.

Tellez testified on his own behalf. He testified that he does not live at the address in Rockport and that he has lived in Corpus Christi with his girlfriend for "about four years." Tellez testified that the Rockport address he listed as his residence was actually his place of work; Tellez's family lived at that address at one point, but Tellez now used it only as an office for his towing and mechanic work. Tellez admitted that he lied to his probation officer about his residence. He testified that he never spent the night at the Rockport address. He acknowledged that one of his community supervision conditions is to report any changes of address, but he listed the Rockport address so he could report to his probation officer easily while he was at work in Rockport.

Tellez testified that he used only the offices that were in the front of the building and never went back to the other parts of the building, including the room he told De Los Santos was his bedroom. Tellez denied knowing that the guns were being stored at the Rockport address. He testified that the guns had belonged to his deceased father, who was a hunter.

De Los Santos's mother, sister, and girlfriend testified next. His mother testified that she stored the guns in their old home because, after Tellez's father died, she planned to sell them. Tellez's mother testified that Tellez did not know the guns were there. Tellez's sister testified that no one had lived at that address since January 2006. She testified that the sheetrock was caving in and the house was infested with bugs and rodents. Tellez's girlfriend confirmed that he had been living with her at various addresses in Corpus Christi for the past four years. Through Tellez's girlfriend's

6

testimony, the defense admitted utility bills from addresses in Corpus Christi on which Tellez was listed as the account holder.

Finally, the State re-called De Los Santos. De Los Santos testified that Tellez's mother visited her at her office after the guns where found at the Rockport address. With regard to the unlawful possession charge and the potential revocation of Tellez's community supervision, Tellez's mother asked De Los Santos "to look the other way this one time because [Tellez] was a good person."

## D. Analysis

Tellez argues that, based on the foregoing evidence, it was both irrational for the trial court to convict him and unreasonable for the trial court to revoke his community supervision. Specifically, Tellez argues that the State failed to prove he possessed the guns because evidence clearly showed that: he did not reside at the address where the firearms were found; the condition of the building was not fit for living; and he was "honest, cooperative, and compliant" when confronted by the weapons. We disagree.

Tellez admitted at trial that he lied to his probation officer about where he lived. Although Tellez attempts to characterize this as evidence that he did not possess the discovered guns, the trial court could have also considered it evidence of Tellez's lack of credibility and would not have been irrational in doing so. Similarly, the trial court could have disbelieved the testimony of Tellez's mother, sister, and girlfriend regarding Tellez's knowledge of the weapons and credited the testimony of his probation officer, whose testimony was strong circumstantial evidence of possession. According to De Los Santos, the guns were discovered at the address Tellez represented to be his residence

and in the room of the home Tellez represented to be his bedroom.   Moreover, Tellez became agitated when the guns were found.   In short, we cannot conclude the trial court acted irrationally in weighing the evidence in the manner it did and in determining beyond a reasonable doubt that Tellez committed the offense of unlawful possession of a firearm. *See Brooks*, 323 S.W.3d at 895, 899; *Laster*, 275 S.W.3d at 517.   Likewise, examining the record in the light most favorable to the trial court's ruling, we conclude that the evidence amounted to more than preponderance, and the court did not abuse its discretion in revoking community supervision.   *See Cobb*, 851 S.W.2d at 873; *see also Canseco*, 199 S.W.3d at 439.   Tellez's appellate issue is overruled.

## III.  CONCLUSION

We affirm both the judgment of conviction (appellate cause number 13-11-00071-CR) and the judgment revoking Tellez's community supervision (appellate cause number 13-11-00103-CR).

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 1st
day of December, 2011.

8