

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00157-CR

_____

NANCY L. NIELSEN, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 5
Tarrant County, Texas
Trial Court No. 1468780

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

In three issues, Nancy L. Nielsen appeals from her conviction for violation of a protective order. *See* Tex. Penal Code Ann. § 25.07. In her first two issues, she argues the evidence is insufficient to support her conviction. In her third issue, she claims she received ineffective assistance of counsel. Finding no merit in these issues, we affirm the trial court's judgment.

### II. BACKGROUND

In 2010, the Arlington Housing Authority created a ten-year plan to reduce or end chronic homelessness in the city. At least a portion of that plan was funded by a government grant, and some of those funds were deployed to the Arlington Police Department for the purpose of creating a new position for a community outreach officer. At the time, Sheila Griffith had worked as an officer with the police department for roughly three to four years. In 2010, she was selected to fill the department's newly created community-outreach-officer position. In that role, Officer Griffith's responsibilities included working with the city's homeless, with those at risk of becoming homeless, with vulnerable populations, and with anyone else who had concerns regarding a homeless matter.

Officer Griffith's work included meeting with those who were homeless and offering them services such as assisting them with obtaining birth certificates and proper identification and referring them for mental health services if needed. Officer

Griffith also provided them with assistance to obtain housing, as the grant had included funding that enabled the city to offer housing to individuals who were homeless. During the course of performing her duties over the years, Officer Griffith assisted more than 2,200 homeless individuals. One of those individuals was Nielsen.

Nielsen was interested in obtaining housing, so Officer Griffith helped her do so by providing her with the requisite application packet and by writing a letter on her behalf. The end result of Officer Griffith's efforts was that Nielsen was successful in obtaining housing. And with Nielsen having secured housing, there was no further need for Nielsen to be in contact with Officer Griffith. As Officer Griffith put it at trial, "I was done. I had no other follow-ups with her."

But Nielsen did not see it that way. She continued communicating with Officer Griffith by sending cards and emails. Officer Griffith found these communications "bothersome" because she did not ordinarily receive communications from people she had assisted. Indeed, of the more than 2,200 people that Officer Griffith had assisted, Nielsen was the only one who had communicated with her in this way. When Nielsen's communications continued, Officer Griffith sought, and obtained, a default stalking protective order. *See* Tex. Code Crim. Proc. Ann. art. 7A.03(a)–(b).

The default protective order issued from the 233rd District Court on January 18, 2012 (Original Protective Order). As relevant to this appeal, it prohibited Nielsen from going within 100 yards of Officer Griffith's place of employment— defined as the Arlington Police Department, 620 West Division, Arlington, Texas

3

76102—"except for the purpose of accessing police services in the case of an emergency." The original protective order was effective for two years and thus was set to expire on January 18, 2014. But on November 28, 2012, Officer Griffith obtained a modified protective order (Modified Protective Order), again by default, which altered the original protective order by extending its duration for another twenty years, meaning it did not expire until November 28, 2032.[1]

On August 1, 2016, Officer Griffith was driving her patrol car southbound on Cooper Street, and her direction of travel took her past the Arlington Police Department's location at 620 West Division. As she drove past that area, Officer Griffith looked to her left and saw Nielsen standing on the sidewalk within 100 yards of the police station. Officer Griffith observed that Nielsen was standing still; she did not appear to be running. The State subsequently filed an information charging Nielsen with violating the modified protective order, alleging in relevant part that on or about August 1, 2016, she

> did intentionally or knowingly, in violation of an order of the 233rd District Court, . . . issued on the 28th day of November, 2012, . . . under authority of the Texas Code of Criminal Procedure, Chapter 7A, go to or near the place of employment or business of Sheila Griffith, a protected individual.

---

[1]Assistant District Attorney Cynthia Gustafson testified that her office sought the modified protective order "to expand on some language because we kept having violations."

4

*See* Tex. Penal Code Ann. § 25.07(a)(3)(A). A jury found Nielsen guilty of that offense, and the trial court sentenced her to 270 days' confinement in the county jail. Nielsen then appealed.

## III. DISCUSSION

### A. Sufficiency of the Evidence

Nielsen's first two issues challenge the sufficiency of the evidence to support the jury's guilty verdict. Specifically, in her first issue, she contends the modified protective order is void. And in her second issue, she argues that the State failed to establish that she acted with the mental state necessary to commit an offense under Penal Code Section 25.07.

#### 1. Standard of review

When reviewing whether sufficient evidence supports a conviction, we look at all of the evidence in the light most favorable to the jury's verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). In this analysis, the crime's essential elements are defined by the hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment or information, does not unnecessarily increase the State's burden of proof or restrict the State's theories of

liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

### 2. Hypothetically correct jury charge

Because we measure the sufficiency of the evidence against the hypothetically correct jury charge, we now explain what such a charge would look like in this case. As applicable here, Penal Code Section 25.07 provides that a person commits an offense if, in violation of an order issued under Chapter 7A of the Code of Criminal Procedure, the person knowingly or intentionally goes to or near any of the following places as specifically described in the order: the residence or place of employment of a protected individual. *See* Tex. Penal Code Ann. § 25.07(a)(3)(A). The information the State filed in this case tracked this statute. Therefore, our analysis as to how the hypothetically correct jury charge would define the elements of the offense for which Nielsen was convicted is informed by two decisions from the Court of Criminal Appeals: *Harvey v. State*, 78 S.W.3d 368 (Tex. Crim. App. 2002), and *Villarreal v. State*, 286 S.W.3d 321 (Tex. Crim. App. 2009).

#### a. Harvey

*Harvey* is instructive to our analysis because in that case, the Court of Criminal Appeals decided what culpable mental state was necessary for an offense under Section 25.07(a). *See* 78 S.W.3d at 368–69. The court first held that the phrase "intentionally or knowingly" in Section 25.07(a) applied only to the acts that are set out "in the subsections that follow those words." *Id.* at 371; *see* Tex. Penal Code Ann.

6

§ 25.07(a)(1)–(6). Thus, in proving that a defendant violated Section 25.07, the State need not show that the defendant intentionally or knowingly violated the applicable court order. *See Harvey*, 78 S.W.3d at 371.

But the court did not end its analysis there. It further held that even though the State need not prove a defendant knowingly or intentionally violated an applicable court order, it nevertheless had to prove the defendant had "certain knowledge" of the order because the term "in violation of an order" in Section 25.07(a) "necessarily includ[ed] certain knowledge that amount[ed] to a mental state." *See id.* To determine what "certain knowledge" was required, the court looked to the specific statutory requirements that applied to each of the several orders referenced in Section 25.07(a). *See id.* at 371–73. And in short, the court held that Section 25.07(a)'s term "in violation of an order" meant "in violation of an order that was issued under one of [the applicable] statutes at a proceeding that the defendant attended or at a hearing held after the defendant received service of the application for a protective order and notice of the hearing." *Id.* at 373.

### b. *Villarreal*

In *Villarreal*, the Court of Criminal Appeals applied its holding in *Harvey* and expressly set forth how the hypothetically correct jury charge would state the elements of an offense under Section 25.07. *See Villarreal*, 286 S.W.3d at 323, 327. There, the order that the appellant had allegedly violated was an order issued under Article 17.292 of the Code of Criminal Procedure. *Id.* at 324–25. Thus, looking to the

7

procedural requirements that applied to Article 17.292 orders, the court said that the

hypothetically correct jury charge would define the elements of the offense as follows:

> (1) appellant (2) in violation of an order issued . . . under Article 17.292,
> Code of Criminal Procedure (3) at a proceeding that appellant attended
> (4) knowingly or intentionally (5) caused bodily injury to [complainant]
> by striking her with his hand or pushing her with his hand (6) and said
> act was intended to result in physical harm, bodily injury, or assault.

*Id.* at 327 (footnote omitted).

### c. Chapter 7A orders

In this case, Nielsen was charged under Penal Code Section 25.07(a) for

violating an order issued under Chapter 7A of the Code of Criminal Procedure. At

the time *Harvey* was decided, Penal Code Section 25.07(a) did not, as it now does,

include protective orders issued under Chapter 7A among the list of court orders

whose violation constituted an offense. *See* Act of Jan. 27, 1997, 75th Leg., R.S., ch. 1,

§ 2, 1997 Tex. Gen. Laws 1, 1–2, *amended by* Act of June 1, 1997, 75th Leg., R.S.,

ch. 1193, § 21, 4596, 4602; *Harvey*, 78 S.W.3d at 368 n.1. But orders issued under

Chapter 85 of the Family Code were included, and the *Harvey* court detailed the

specific culpable mental state requirements that applied to cases in which the State

prosecutes a defendant under Penal Code Section 25.07(a) based on the defendant's

violation of a Chapter 85 order. *See Harvey*, 78 S.W.3d at 371–73. And Article 7A.04

of the Code of Criminal Procedure generally makes the notice requirements that apply

to orders issued under Chapter 85 of the Family Code applicable to orders issued

under Chapter 7A of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc.

8

Ann. art. 7A.04 (providing that "[t]o the extent applicable, except as otherwise provided by this chapter, Title 4, Family Code, applies to a protective order issued under this chapter"). Accordingly, what the Court of Criminal Appeals said in *Harvey* concerning orders under Chapter 85 of the Family Code also applies to orders under Chapter 7A of the Code of Criminal Procedure.

Therefore, guided by *Harvey* and *Villarreal*, we conclude that the hypothetically correct jury charge in this case would define the elements of the charged offense as follows: (1) Nielsen (2) in violation of an order of the 233rd District Court issued on November 28, 2012, under the authority of Chapter 7A of the Texas Code of Criminal Procedure (3) at a hearing held after Nielsen received service of the application for a protective order and notice of the hearing (4) intentionally or knowingly (5) went to or near the place of employment or business of Sheila Griffith (6) who was a protected individual. *Cf. Villarreal*, 286 S.W.3d at 327; *Harvey*, 78 S.W.3d at 372–73.

Now that we have set out the hypothetically correct jury charge, we turn to Nielsen's first two issues. And we will begin by addressing her second issue, in which she contends that the evidence is insufficient to support a finding that she acted with the requisite mental state, because that contention relates directly to our above discussion concerning the hypothetically correct jury charge.

### 3. Sufficient evidence that Nielsen acted with the requisite mental state

In her second issue, Nielsen, citing Penal Code Section 25.07(a)(3), argues that the State failed to prove that she knowingly or intentionally went to or within a place specifically described in the modified protective order because there is no evidence that she was ever made aware of the order's contents. But this argument is premised on a misunderstanding of the State's burden of proof.

The record shows that the modified protective order was issued by default. And while that order was issued under the provisions of Article 7A of the Code of Criminal Procedure, as we stated above, the provisions of Family Code Chapter 85 generally apply to the order. *See* Tex. Code Crim. Proc. Ann. art. 7A.04. That includes Section 85.006, which provides that a court can render a binding protective order on a respondent who does not attend the hearing so long as the respondent received service of the application and notice of the hearing. *See* Tex. Fam. Code Ann. § 85.006; *Harvey*, 78 S.W.3d at 368. Thus, the State did not have the burden to show that Nielsen was actually aware of the modified protective order's contents. *See Harvey*, 78 S.W.3d at 371 (noting generally that the procedural protections applicable to the various orders listed in Penal Code Section 25.07 guaranteed that a party subject to such an order "would know the terms of the order or would know that he was subject to the issuance of such an order"). Rather, as we set forth in the hypothetically correct jury charge, the State needed only to show that the modified

protective order was issued at a hearing held after Nielsen received service of the application for the modified protective order and notice of the hearing.

And there is sufficient evidence of that here. The trial court admitted the modified protective order as an exhibit, and it recites (1) that the order was issued after a hearing; (2) that Nielsen "although duly and properly cited with notice, did not answer or appear and wholly made default"; and (3) that Nielsen had "received actual and reasonable notice of the hearing." The order also reflects that after considering the pleadings and hearing the evidence, the issuing court found "that all necessary prerequisites of law have been satisfied and the Court has jurisdiction over the parties and subject matter of the cause." This evidence was sufficient to enable a rational juror to conclude that the modified protective order was issued at a hearing held after Nielsen received service of the application for the modified protective order and notice of the hearing. *See Gaw v. State*, No. 05-08-00463-CR, 2009 WL 5193931, at *6 (Tex. App.—Dallas Dec. 17, 2009, no pet.) (not designated for publication) (holding that "[t]he recitals in the order that appellant was duly and properly cited and failed to appear, and that the court had jurisdiction over the parties, [was] evidence the protective order was valid and issued after notice and hearing as required by the family code"). Accordingly, we overrule Nielsen's second issue.

### 4. Collateral attack on the modified protective order

In her first issue, Nielsen contends that the modified protective order is void and that consequently, the evidence is insufficient to prove that she actually violated

11

an order issued under Chapter 7A of the Code of Criminal Procedure. As we said above, the original protective order had a two-year duration. When issuing the modified protective order, the trial court changed the duration, extending it to twenty years from the date the modified protective order was signed. Nielsen argues that the trial court lacked jurisdiction to modify the duration of the original protective order to a period that fell beyond the second anniversary of the date of the original order. Because the trial court did so, Nielsen argues, the modified protective order is void.

The State responds by arguing that Nielsen's complaint hinges on an impermissible collateral attack on the modified protective order. A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *Glandon v. State*, No. 14-10-00020-CR, 2011 WL 345634, at *5 (Tex. App.— Houston [14th Dist.] Feb. 1, 2011, no pet.) (mem. op., not designated for publication). Here, Nielsen attempts to avoid the effect of the modified protective order in a proceeding brought for a different purpose, namely, a criminal prosecution for her violation of that order.

Only void judgments are subject to collateral attack. *Id.* at *6. As our sister court has observed, several Texas appellate courts "have addressed in unpublished decisions collateral attacks in criminal appeals regarding prior civil judgments and have applied the traditional collateral attack analysis applicable to civil judgments." *See Rogers v. State*, No. 09-15-00270-CR, 2017 WL 2698038, at *2–3 (Tex. App.— Beaumont June 21, 2017, no pet.) (mem. op., not designated for publication)

12

(collecting cases).[2]  Under that standard, a judgment is void only when it is apparent that the court rendering judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act."  *Glandon*, 2011 WL 345634, at *6 (citation omitted).  We "must indulge every presumption in favor of the regularity of the proceedings and documents" in the trial court.  *McCloud v. State*, 527 S.W.2d 885, 887 (Tex. Crim. App. 1975); *Glandon*, 2011 WL 345634, at *6.  The presumption of regularity means that "recitations in the records of the trial court, such as a formal judgment, are binding in the absence of direct proof of their falsity."  *See Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g); *Glandon*, 2011 WL 345634, at *6.

Here, in addition to the recitals we outlined in our discussion of Nielsen's second issue, the modified protective order recited that the court had found "all necessary prerequisites of law [had] been satisfied and [that] the Court [had] jurisdiction over the parties and subject matter of the cause."  The record contains no direct proof that these jurisdictional recitations are false, and thus they are binding here.  *See Breazeale*, 683 S.W.2d at 450; *Glandon*, 2011 WL 345634, at *6.  As Nielsen has not demonstrated that the modified protective order is void, she may not attack it collaterally in this proceeding.  *See Rogers*, 2017 WL 2698038, at *2–3; *Glandon*,

---

[2]We note that courts reviewing collateral attacks on criminal judgments apply a parallel analysis.  *See Glandon*, 2011 WL 345634, at *6 (citing *Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001)).

2011 WL 345634, at *5–6; *Ramirez v. State*, No. 08-07-00207-CR, 2008 WL 3522369, at *4 (Tex. App.—El Paso Aug. 14, 2008, no pet.) (mem. op., not designated for publication); *Wynn v. State*, No. 2-04-394-CR, 2005 WL 1542674, at *1 (Tex. App.—Fort Worth June 30, 2005, no pet.) (mem. op., not designated for publication); *Dillard v. State*, No. 05-00-01745, 2002 WL 31845796, at *3–5 (Tex. App.—Dallas Dec. 20, 2002, no pet.) (not designated for publication). We therefore overrule her first issue.

## B. Ineffective Assistance of Counsel

In her third issue, Nielsen contends that she received ineffective assistance of counsel.

### 1. Applicable law

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that her counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

## 2. Discussion

Nielsen contends that her counsel was deficient because he failed to object to the information in this case on the ground that the modified protective order was void. She claims that the consequence of this failure was that she waived any complaint that the information was deficient. *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (providing that a defendant waives any defect, error, or irregularity of form or substance in an information unless she raises the objection before the date on which trial commences). But as we explained above, Nielsen's contention that the modified protective order is void constitutes a collateral attack on that order, one that is not permissible in this proceeding. Accordingly, we cannot say that her counsel's failure to object to the information on that basis was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. We thus cannot conclude that Nielsen met her burden to satisfy the first prong of the *Strickland* test—to establish that her counsel's representation was deficient. *See* 466 U.S. at 687, 104 S. Ct. at 2064; *Nava*, 415 S.W.3d at 307. And consequently, we need not address the second prong of the *Strickland* test. *See Williams*, 301 S.W.3d at 687. We overrule Nielsen's third issue.

## IV. CONCLUSION

Having overruled all of Nielsen's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

16

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 9, 2020