# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00225-CR

**Broderick Robinson, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-10-300980, HONORABLE CLIFFORD BROWN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found Broderick Robinson guilty of two counts of arson of Robert Heartl's habitation and found that he used a deadly weapon in committing the offenses. The trial court sentenced him to thirty years in prison on each count to be served concurrently. Appellant now challenges the legal sufficiency of the evidence to support particular elements of the offenses. We will affirm the judgment.

## BACKGROUND

Some time before the fires on May 10, 2010, appellant and Heartl met at a club and had what Heartl described as a "very short-term, acquaintance-like friendship" that led to "a short physical relationship a couple of times" that Heartl thought had run its course. According to Heartl, however, appellant continued to call him. Heartl said that he did not think the relationship warranted a "break up" and tried to distance himself by being aloof and monosyllabic when appellant called.

On May 9, 2010, appellant and Heartl were at the same bar. Heartl was with a friend but, noticing that appellant was very intoxicated, decided to take appellant to Heartl's residence to sober up. Heartl drove appellant's car—a white, older model Mercedes. He did not notice a smell of gasoline in the car. Heartl's friend arrived separately. When appellant woke up before sunrise on May 10, he argued with Heartl's friend motivated by what Heartl perceived to be jealousy. Appellant and Heartl's friend both left, and Heartl went back to sleep.

Heartl testified that, later that morning of May 10, he was awakened by the sound of a gate closing and noticed what he thought was the sun coming up. He then realized that flames were coming out from under an upside-down orange Igloo container on his front stoop about two feet from his front door. He opened the door, kicked the container away, and extinguished the fire with a water hose. Heartl testified that, as he was putting out the fire, he saw appellant driving away in the white Mercedes. Heartl said he did not call the police because he thought the incident was over. He testified that his door was sooty and that the screen door was damaged by the flames.

A neighbor testified that, around 11 a.m. on May 10, she saw an unfamiliar white sedan (a Mercedes or BMW) occupied by a man matching appellant's general description who seemed to be waiting for someone. She saw him get out of the vehicle carrying an orange Igloo-like drink cooler. She testified that the cooler resembled the burned one in evidence except that it was not burned when she saw it. She did not see appellant start a fire, nor did she recognize him in a photo lineup.

Heartl testified that, over the course of the afternoon, he received (but did not answer) telephone calls from appellant's cell phone. Heartl decided to lock the gate to his yard. Sometime

2

after 6 p.m., he heard appellant rattling the gate and yelling that he would not be treated "like this" and accusing Heartl of stealing money from the Mercedes. Heartl testified that, when he threatened to call the police about appellant's conduct, appellant responded "if you think that's bad, just wait until [you] see what happens next." Appellant was driving a pickup truck at that point. Heartl called the police, who referred the matter to the fire department's arson investigator. The investigation turned up evidence that the Igloo fire was set using a plastic bottle as a Molotov cocktail. After the investigators left sometime before 10 p.m., Heartl went to sleep.

He was awakened by a neighbor pounding on his door around 11 p.m. Heartl smelled smoke in his room and left his home. The neighbor testified that he saw the flames on the outside of Heartl's house and ran over to fight the fire. The neighbor was able to douse the big flames, but the fire continued to smolder in the wall and inside the storage closet adjacent to Heartl's bedroom. A police officer testified that he saw six-foot flames on the house. The fire department arrived and extinguished the fire. A firefighter found a melted gas can at the scene, but did not find any gas-powered equipment in the storage closet. Heartl testified that he did not own a gasoline can. He testified that the doors to the storage closet were damaged, items inside the closet were destroyed, and that the drywall by his bed was burned by the fire.

Arson investigators, including Mike Crabill, returned and noted the "alligatoring" of the exterior wall, which in these circumstances indicates a higher-than-normal temperature possibly fueled by an accelerant. Crabill testified that the second fire was started using a two-gallon red plastic gasoline container. Lab testing showed the presence of gasoline in the containers from the scene connected with both fires. Crabill testified that whoever set the fires did so with the intent to

damage or destroy the habitation because "that would be the only reason to set fire to the house." He testified that the first fire was set in front of the only door and windows that could be used to escape. He said that the second fire had the added danger of occurring when many people are asleep and susceptible to unwitting smoke inhalation. Crabill testified that both fires were deliberately set.

Appellant's housemate testified that gas-related items were missing from the garage at a house appellant shared with him and two other men. The housemate testified that he noticed after May 10 that he was missing a faded red plastic two-gallon gas can along with gasoline from a storage can at his house. He also recalled seeing an orange Igloo-style cooler in the area of the garage where appellant kept items, but said that cooler was no longer in the garage. He testified that, on May 10, he saw appellant driving his pickup truck between 8 and 9 p.m. and later saw him at their house at 11:15 p.m. He said that appellant did not smell of gasoline or have any apparent singe marks.

A second arson investigator, Joe Loughran, followed up on Crabill's work. On May 11, 2010, he went to appellant's house to see if the white Mercedes was there. He saw appellant pulling out of the driveway in the Mercedes, and noticed that it and a pickup truck were filled with personal belongings as if someone was moving. Loughran spoke with appellant, who Loughran said was "intent on explaining why the car had an odor of gasoline." Loughran said that appellant said that someone had drilled holes into his gas tank and had removed a grounding wire meaning to cause the car to explode. Loughran testified that he did not see evidence that corresponded with appellant's story, but did not photograph the absence of that correlation. After their conversation—some of which was recorded and played for the jury—Loughran arrested

4

appellant. Loughran testified that, over the course of two interviews—one at appellant's house and the second in jail—appellant initially denied knowing Heartl, then said Heartl was going to buy a vehicle from him, then said Heartl had stolen money from him. Appellant initially denied having been near Heartl's home, then admitted having "words" over some missing money. Appellant admitted having the cell phone number from which Heartl received several calls on May 10. Appellant's phone records indicated that he made calls from near Heartl's house near the time of both fires.

**DISCUSSION**

Appellant challenges the legal sufficiency of the evidence to support findings necessary to the guilty verdicts on two counts of arson. A person commits arson by starting a fire with intent to destroy or damage a habitation knowing that it is within the limits of an incorporated city or town. Tex. Penal Code § 28.02. By his first issue, appellant contends that the evidence is legally insufficient to prove beyond a reasonable doubt that the perpetrator intended to damage or destroy a habitation by starting a fire as alleged in Count I. By his second issue, appellant contends that the evidence is legally insufficient to prove beyond a reasonable doubt that he was the arsonist.

**Standard of review**

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 313 (1979). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

elements of the offense beyond a reasonable doubt. *Id.* at 319. The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In determining the legal sufficiency of the evidence, we must consider all evidence in the record, whether direct or circumstantial or properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318. A legal-sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury, as exclusive judge of the facts, weighs and resolves conflicts in the evidence and draws reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04.

**Intent regarding the fire**

The most direct evidence concerning intent is that the fires were set using accelerants on the porch of a wooden frame house and adjacent to the doors of the storage room of the house. In the apparently short time the first fire burned, the fire caused smoke damage to the wooden door and damaged the screen sufficiently to require replacement. The second fire burned hot enough to cause the surface to "alligator," and it spread enough to burn a hole in the bedroom wall. There is no evidence that either fire was set with an intention other than damaging the habitation. Viewed

in the light most favorable to the verdict, this evidence is sufficient that a rational trier of fact could find beyond a reasonable doubt that the perpetrator intended to damage the habitation.

**Identity of arsonist in both counts**

Appellant contends that the evidence was insufficient to show his guilt. Indeed, there is no testimony that anyone saw appellant start the fires. Appellant's fingerprints were not lifted from the items used to start the fires. No physical evidence was taken from appellant showing that he had gasoline on him or other indicia that he had started fires.

Circumstantial evidence linked appellant to the fires, however. Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries can draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial, although they cannot permissibly reach conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* at 15. "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them," while "[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Id*. at 16.

Evidence that the fires were set using gasoline and small containers is unchallenged. Appellant's housemate testified that gasoline and items like those used to set the fires had been present in the garage he and appellant shared and were no longer there after the fire. Heartl's neighbor saw the driver of a white car like appellant's carrying a cooler like the one found charred in Heartl's yard toward Heartl's house. Appellant's car undisputedly smelled like gasoline the day

7

after the fires, and investigators saw nothing consistent with appellant's explanation for that odor. This evidence connects appellant to the means used to set the fires.

Appellant's cell phone records placed him near the site of the fires near the time each fire was set and when Heartl testified that appellant threatened him. Heartl and his neighbor both testified that they saw a white Mercedes, like the one appellant was found driving the next day, pulling away from Heartl's house driven by a man who looked like appellant. This evidence connects appellant to the scene of the fires at the time they were set.

Heartl testified that appellant was jealous and angry early on the morning of May 10, that appellant drove away from his house after the first fire, that appellant called throughout the afternoon, and that appellant returned to Heartl's house and threatened him that evening. The fire investigator said that damaging the house was the only reason to set the fires. The fact that the fires might have been bigger does not negate the intent to damage the house. This evidence connects appellant to the intention to set the fires.

Loughran testified that, the day after the fires, appellant's vehicles were packed with belongings as if "someone" was moving, and appellant could not tell Loughran where he was going to be later. This evidence supports an inference of an intent to flee from which a fact finder may infer guilt. *See Clayton*, 235 S.W.3d at 780.

The jury weighed this testimony and the credibility of the witnesses—including the lack of eyewitness testimony of appellant setting fires, Heartl's criminal history,[1] and the recently

---

[1] Heartl had two convictions for possession of a controlled substance and a third for robbery. He served three years in prison for those offenses.

ended relationship—and found appellant guilty on both counts. Viewed in the light most favorable

to the verdict, this evidence collectively is legally sufficient to support the verdict.

## CONCLUSION

Finding no reversible error presented, we affirm the judgment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Puryear and Rose

Affirmed

Filed:   June 21, 2013

Do Not Publish